**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSE DIVISION**

**CIVIL COMPLAINT PRO SE (NON-PRISONER) LITIGANTS IN ACTIONS UNDER 28**
**U.S.C. § 1331 or § 1343 or 42 U.S.C. § 1983 or § 1985**

ZOLTAN BARATI,

Case No. 4:18 Cv 275 RH CAS

vs.

FLORIDA ATTORNEY GENERAL
PAMELA JO BONDI,
MOTOROLA SOLUTIONS, INC.

Jury Trial Requested?
☑ YES   ☐ NO

FiledJUN08'18UsDcFln4AM1130

## PARTIES TO THIS COMPLAINT

Plaintiff
Zoltan Barati
26741 Portola Pkwy, Ste. 1E# 165
Foothill Ranch, CA, 92610-1763
Telephone: (949) 407 8149

Defendants
Honorable Florida Attorney General, Pamela Jo Bondi
The Capitol, PL-01
Tallahassee, FL 32399
Telephone: (850) 414-3854
Sued in ☑ Individual and ☑ Official capacity

Motorola Solutions, Inc.
500 W Monroe Street, Ste. 4400
Chicago, IL  60661-3781
Telephone: (847) 576 5000

**TABLE OF CONTENTS**

| | |
|---|---|
| TABLE OF AUTHORITIES | V |
| COMPLAINT | 1 |
| JURISDICTION AND VENUE | 1 |
| PARTIES | 13 |
| STATEMENT OF FACTS | 26 |
| STATEMENT OF CLAIMS | 44 |
| Count I, | 44 |
| U.S. Constitutional Law Rational Bases Test Omission | 44 |
| Count II | 46 |
| 14th Amendment Substantive Due Process Omission | 46 |
| Count III | 48 |
| 14th Amendment Equal Protection Law Omission | 48 |
| Count IV | 50 |
| Arbitrary and Capricious Act | 50 |
| Count V | 51 |
| Depriving Vested Property Interest | 51 |
| Count VI | 52 |
| Depriving Liberty | 52 |
| Count VII | 54 |
| 14th Amendment Procedural Due Process Deprivation | 54 |
| Count VIII | 58 |
| Causing Loss of Properties Invested in the Case of Action | 58 |
| Count IX | 59 |
| 14th Amendment Violation | 59 |
| Count X | 60 |
| 42 U.S. Code § 1985 (2) Conspiracy to Interfere with Civil Rights | 60 |
| Count XI | 63 |
| 42 U.S. Code § 1985 (3) Depriving Persons of Right or Privileges | 63 |
| Count XII | 63 |

42 U.S. Code § 1983 State Actor Doctrine                    63

Count XIII                                                 67

42 U.S. Code § 1983                                        67

RELEIF REQUESTED                                           67

CERTIFICATION                                              70

# TABLE OF AUTHORITIES

CASES

Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142, 151 (1970)

21, 43, 65

Allen v. McCurry 449 U.S. 90 (1980) at Page 449 U. S. 100        6, 39

Armstrong v. Manzo, 380 U. S. 545, 380 U. S. 552 (1965)        25, 58

Board of Regents of State Colleges v. Roth 408 U.S. 564 (1972)        31, 52, 54, 57

Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)        7, 59

Butz v. Economou, 438 U.S., at 512        14

Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979)        12

Dennis v. Sparks, 449 U.S. 24, 28-29 (1980)        22, 61

Eisenstein v. City of New York 556 U.S. 928 (2009)        5, 13, 33

Ex Parte Virginia, 100 U.S. 339 (1879)        20

Ex parte Young, 209 US 123        23, 24, 59

Hafer v. Melo, 502 U.S. 25 (1991)        14, 15, 16

Livadas v. Bradshaw, 512 U.S. 107, 132 (1994)        12

Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990)        3, 17,18, 31, 32,

38, 46, 51, 56

Logan v. Zimmerman Bush Co., 455 U.S. at 432        40, 51, 57

Malinski v. New York, 324 U.S. 401, 415 (1945)        44, 48, 58

Memphis Community School District v. Stachura, 477 U.S. 299 (1986)        69

Plyler, 457 U.S. at 223 (1982)        49

Ramos v. Town of Vernon, 331 F. 3d 315, 321 (2d. Cir. 2003)        48

Ridenour v. Kaiser-Hill Company, LLC., 397 F.3d 925, 932 (10th Cir.2005)        16, 17, 35, 36,

44, 45, 51

Sequoia Orange Company v. Baird–Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998)   3, 16,

17, 27, 31, 32, 35, 40, 45, 46, 51, 56, 58

Sioux City Bridge Co., 260 U.S. 441 (1923)   50

Smyth v. Ames, 169 U.S. 466 (1898)   24

Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352 (1918)   50

Sweeney v. Abramovitz, 449 F. Supp. 213 - Dist. Court, D. Connecticut (1978)   4, 7

United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc)

34, 42,  64

Village of Willowbrook v. Olech, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000)   10, 37,

50

## STATUTES

42. U.S.C § 1983 - Civil Action for deprivation of rights   2, 3, 4, 6, 11, 12, 14, 15, 16, 19, 20, 22,

39, 42, 62, 63, 65, 67, 68, 69

42. U.S.C § 1985 (2) - Conspiracy to interfere with civil rights, Obstruction Justice   2, 4, 11, 12, 20,

60, 61, 65

42. U.S.C § 1985 (3) - Depriving persons of rights or privileges   2, 4, 11, 12, 20,

61, 63, 65

28 U.S.C. § 1331 - Federal question   3, 7, 11

28 U.S.C. § 1343 (3) - To redress the deprivation, under color of any State law, statute   11.12

31 U.S.C. §3730 (c) - Rights of the Parties to Qui Tam Actions   35, 36, 41, 45,

51

68.083 (2) of the Florida False Claims Act (§§68.081-68.092, Fla. Stat. 2009)   37, 40, 47

68.084 (2) of the Florida False Claims Act (§§68.081-68.092, Fla. Stat. 2009)   5, 39

68.084 (3) of the Florida False Claims Act (§§68.081-68.092, Fla. Stat. 2009)   37, 47, 51, 63

# COMPLAINT

1. There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court nor has any such action been previously filed and dismissed or transferred after having been assigned to a Judge. (There was state case with a different transaction.)

# JURISDICTION AND VENUE

☑ Federal Question Jurisdiction

**2. Overview: The Claimant developed vested property interest in State False Claims Act case progressed to be scheduled for trial. The cause of action of this federal civil right case has risen from State False Claims Act case between Motorola Inc. and Zoltan Barati, which the Florida Attorney General dismissed without leave of court, valid purpose, and rational relation; without notice to the relator prior to dismissal, without due process, thus conflicting 14th Amendment as the federal law. Acting without leave of court, the Fla. Attorney General immediately divested jurisdiction to review the dismissal on merit and the Fla. 1st DCA confirmed it, based on authority - color of law, while misconstrued federal decisions were filed. The Fla. State Court was unable or unwilling to protect federal rights. Such dismissal prevented access to court to review on merit. It prevented the review of false claims filed in court documents and prevented the review of false constructions of federal law, while divested the Claimant / Barati's vested property interest, without due process, and without equal protection, causing narrowed economic opportunity, loss of properties and liberty. The Fla. Attorney General failed to apply independent judgment and acted in concert with Motorola Solutions as if they were each other's agents to violate or to disregard the federal law under the color of law.**

1

The Fla. Attorney General acted with the private party, Motorola Solutions Inc., potentially mislead state Court by filing and omitting critical sections of decisions and misconstruing federal law or federal decisions. The Defendants injured the relator for pursuing his given right as a witness of the scheduled trial. Representative of the defendants encouraged other State Attorneys General to act similarly using this first impression case as precedence to undermine False Claims Act's role in combating fraud. The Florida Supreme Court did not recognize jurisdiction to review.

The basis for jurisdiction: ☑ State/Local Officials *(§ 1983 case)*

3.  The State Court's **construction relied on interpretation and adoption of federal law**, but the Fla. Attorney General and the State's interpretation is **not consistent with the federal law**. The State filings and decision omitted crucial part - presenting legitimate purpose and rational relation for dismissal. The adopted federal decisions rely on presenting legitimate purpose as a condition of dismissal, notwithstanding the objection of the relator. Omitting such condition creates a different result, conflicting the U.S. Constitution. (Throughout the document, emphases are added. Motorola Solutions, Inc. will be referred as Motorola.)

4.  This civil right case is a cause of action related to **federal law** ( the 14th Amendment due process clause and equal protection clause, 42. U.S.C § 1983; conspiracy to interfere with civil right and obstructing justice, injuring witness in persons's liberty or property, depriving persons of rights or privileges under 42. U.S.C § 1985 (2) and (3) ). The federal question jurisdiction of the district courts encompasses causes of action created by federal statutes. The established (first impression) State decision, which became a law, violates rights secured by federal law. When a federal law creates the claim and the rules of decision governing it,

2

federal jurisdiction exists under U.S.C. § 1331, even if state law is invoked to challenge. Federal jurisdiction has been recognized over causes of action created by state law where an important question of federal law is an essential element in the case. Courts held that federal jurisdiction exists when the state law claim involved an inquiry into the **constitutionality of a federal statute**.

5. Section 1983 is also invoked upon an **erroneous interpretation of federal law** and deprivation of rights and privileges **secured by the Constitution and laws**, such as the Fourteenth Amendment. This can be applicable for using the overarching principals of the Federal False Claims Act but omitting a crucial parts of the federal decisions to dismiss a Qui Tam case: omitting presenting legitimate interest prior to dismissal, which is to prevent deprivation of substantive due process and omitting allowing procedural due process to determine legitimacy, similarly to the law established for **executive actions**[1]. Due process refers to the **fairness** and **accuracy of the decision-making process**. Section 1983 can be used to remedy the deprivation of "rights" granted to the plaintiff. Constitutional provisions that are enforceable by a private party under Section 1983 consist of those which **create personal rights** and either explicitly apply to the states, or have been held to apply to the states by operation of the Fourteenth Amendment. Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws.

---

[1] Sequoia Court (Sequoia Orange Company v. Baird–Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998) used Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990) to explain Sequoia test standard, the substantive and procedural due process required for an executive action such as dismissing a Qui Tam case. The Supreme Court has interpreted the Fifth Amendment for the Federal Government and Fourteenth Amendment for the State identically. The due process of law means the same in the Fifth Amendment and in the Fourteenth, applicable for the State.

6.  In general, according to Sweeney v. Abramowitz, 449 F. Supp. 213 (D. Conn. 1978): "[e]ven though the claim is created by state law, a case may `arise under' a law of the United States if the complaint **discloses a need for determining the meaning or application of such a law**." The same applies for malicious, irrational and arbitrary dismissal in a non-party, non-prosecutorial role under color of law[2]. The act abridged privileges, deprived vested property interest, caused loss of property and liberty. It deprived due process, and equal protection. The Claimant has strong support from relevant case law, federal decisions, supreme court rulings and has right to file on federal court regarding a constitutional matter.

7.  The issues **have not been fairly and fully litigated** in State court. The related due process insufficiency became a federal constitutional matter. This federal claim cause of action are the violation of:

- 14th Amendment Due Process Clause,

- 14th Amendment Equal Protection Clause,

- U.S.C § 1985 (2) conspiracy to interfere with civil rights, obstruction of justice,

- U.S.C § 1985 (3) depriving persons of rights or privileges,

- U.S.C § 1983 Civil Action for deprivation of rights with a private party (State Actor Doctrine),

as the Fla. Attorney General failed to apply independent judgment and acted in concert with Motorola as if they were each other's agents and prevented due course of justice in pending matter scheduled for trial. The dismissal without prior notice to the relator, without leave of

---

[2] Color of Law: The appearance of legal right.The act of a state officer, regardless of whether or not the act is within the limits of his or her authority, is considered an act under color of law if the officer purports to be conducting himself or herself in the course of official duties. Under the civil rights act of 1871 (42 U.S.C.A. Section 1983), color of law is synonymous with State Action, which is conduct by an officer that bears a sufficiently close nexus to a state so that the action is treated as though it is by the state.

4

court, without substantive due process (showing a legitimate interest, and rational relation) and without procedural due process (opportunity to oppose the legitimate interest) divested the jurisdiction to review related issues on State court. The dismissal was based on ruling with procedural insufficiency. It was dismissed **by a non-party to the case**, who was not in control of the case, on a basis unrelated to factual guilt or innocence. Only the actual participants can control the Qui Tam / FCA litigation. (United State ex rel. Eisenstein v. City of New York 556 U.S. 928 (2009)). Therefore, such dismissal would need due process. But the trial Court determined that "Because this Court no longer has jurisdiction, there shall be no further proceedings in this matter." (December 17, 2014, Case No. 2009-CA-1493). While appealing, the Fla. 1st DCA decision on February 23, 2016 (Case No. 1D15-213) did not allow the relator to challenge the dismissal:

> "Conclusion
> The voluntary dismissal by the Attorney General in this case was not subject to challenge by Appellant. Thus, the trial court's decision terminating proceedings in this matter was correct; the court properly ruled that it was divested of jurisdiction when the Attorney General dismissed the action, properly recognizing that the Attorney General "had the authority to file a voluntary dismissal notwithstanding any objections of the Relator pursuant to Section 68.084(2), Florida Statutes." "

8. The Fla. Supreme Court **did not recognize jurisdiction** as decided on August 22, 2016 (Case No. SC16-834).

9. Res Judicata is not applicable, when a claimant was **not afforded a full and fair opportunity** to litigate the issue decided by a State court, thus the **adequacy** of the State's procedure can be challenged. The State Court ruling omitted crucial parts of the federal decisions - presenting legitimate interest prior to dismissal, thus deprived substantive and procedural due process to determine legitimacy. It prevented the review of the merit of the dismissal. It created **unfairness and inadequacy in the state procedures**.

10. The Fla. Attorney General and the State Court ignored the Rational Basis Review in U.S. constitutional law, which applies to the States through the 14th Amendment. The State Court ignored federal decisions that a process was due before the government could take an action that affected a citizen in a **grave way. Neither** the Fla. Attorney General **nor** the State court showed **willingness or ability to protect federal rights**. The collateral estoppel bar is **inapplicable** when the claimant did not have a **full and fair opportunity to litigate** the issue decided by the State court. Thus, a claimant can file a federal suit to challenge the adequacy of state procedures.

11. In reviewing the legislative history of § 1983 in Allen v. McCurry 449 U.S. 90 (1980) at Page 449 U. S. 100, the Court inferred that Congress had intended a federal remedy in **three circumstances**, applicable under § 1983, and established: where state **substantive** law was facially **unconstitutional**, where state **procedural** law was **inadequate** to allow full litigation of a constitutional claim, and where **state procedural law**, though adequate in theory, was **inadequate in practice**. In short, the federal courts could step in where the state courts were **unable or unwilling to protect federal rights**. This understanding of § 1983 supports an exception to *res judicata* and collateral estoppel where State law **did not provide fair procedures** for the litigation of constitutional claims, or where a State Court **failed to even acknowledge the existence of the constitutional principle** on which a litigant based his claim.[3]

12. The trial court and Fla. 1st DCA court decisions removed the relator's right to challenge the dismissal's unconstitutionality, a collateral estoppel should not deprive him of the federal judicial hearing of that claim in a § 1983 suit.

---

[3] These circumstances are described in <u>Allen v. McCurry 449 U.S. 90 (1980) at Page 449 U. S. 100</u>

6

13. As right to proceed on federal court, the Supreme Court said recently in a different context, "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is `**patently unconstitutional**.'" *Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)*. The State gave right to the relator to proceed with a False Claims Act case. The State statute defined procedures according to rule of civil procedures. The Fla. Attorney General arbitrary dismissed the case without legitimate purpose, without leave of court, without prior notice, without substantive and procedural due processes. Without presenting **rational** relation, it caused an **irrational** discrimination, which is a violation of equal protection law. The relator, based on the belief that he had right, proceeded with case while lost his properties vested in the case. The dismissal act impoverished the relator. An exposure as an "informer" or whistleblower narrows the opportunities for source of income. The case was scheduled for trial to address remedies. The dismissal impacted the relator in a grave way, thus he would be entitled for due process. The federal law prohibits State making or enforcing law depriving liberty, property without due process. The review of such a constitutionally challenging act on federal court is within the due process right of the plaintiff on federal court.

14. It is a **necessity** of preserving plaintiffs' ability to **vindicate their federal rights undeterred by fear of being subjected to unfounded malicious prosecution suits**. Such a balancing may itself be **a federal question sufficient to invoke § 1331 jurisdiction**. ( *Sweeney v. Abramowitz*, 449 F. Supp. 213 ). Mr. Russel Kent, the Special Counsel of the Office of the Attorney General, threatened the Claimant with sanctions and pursue of

remedies for Claimant's pursuing the vindication of his civil and federal right in an attempt to prevent court procedures and to discourage attorneys to take on the case. The Fla. Attorney General impoverished the Claimant, making him lose his properties by depriving property interest in concert with a private party, Motorola. This also limited access to basic services, electricity, cell phone communication, internet or ability to keep up a computer in working condition.

15. Federal money could be at stake, because States frequently use federal funding for public safety equipments, such fingerprinting identification and public safety radio system. Even if a relator reports related abuse, a State can make deals with a corporation to dismiss relator's case and prevent a review of legitimate interest thus removing check on corporate or political influence and make the federal government pay for it. The violation or disregard for the relator's federal right reflects a bias towards Motorola Solutions, Inc. This creates unfair environment for companies who is upfront with the contract cost and pricing versus a company who bid with lower price but generates expenses multiple of the contract price for maintenance and repurchase of the product. This also creates a **different outcome on federal versus state Court** because the removal of legitimate purpose before dismissal can hurt the federal government but it can benefit a State government. A State may prefer to omit legitimate interest for dismissal, while the federal government does not because it may limit the recovery of federal funds used by the State, while the State enjoys corporate contribution.

16. The U.S. Supreme Court's non-review of writ of certiorari, filed by the relator pro se, is not a matter of right, but of judicial discretion. It did not express the Court's view of the merits of the case. Likely they would not deal with federal cause of action on State Court before all options explored on the lower court, the federal court.

8

17. The **State Court Judgments** principle controls so long as the litigant had a **full and fair opportunity to litigate his claims on state court**. This did not occur with the case at bar. The dismissal was based on substantive authority and the claimed divested jurisdiction prevented review by the upper courts on merit of the dismissal, prevented the review of the legitimate interest.

18. Under the **Case Law Doctrine** (law of the case) the exemption applies, as the ruling resulted in **manifest injustice**. The congressional intent is to avoid dropping a FCA case without legitimate reason and to keep check on corporate or political influence. This check was removed without due process and established as a State law. Such interpretation conflicts the U.S. Constitution because deprived relator from substantive and procedural due process and caused him losing his properties. Impoverished the relator while he proceeded according to the given right. It is also inconsistent with the **Senate Report** to the False Claims Amendments Act of 1986, which explained that the **relators may object if the government moves to dismiss without reason**.

19. **This case does not argue** whether the Government can move to dismiss an FCA case or whether the government need to intervene (proceed) with the case before dismissal - as this was the focus of the Fla. 1st DCA opinion; as long as the dismissal is within the established constitutional terms, has valid purpose, rational relation and allows reviewing legitimate interest to protect given right - which the Fla. 1st DCA ignored. This claim neither argues whether a meritorious case can be dismissed as long as it is dismissed within constitutional terms with legitimate interest and rational relation and allows the relator to oppose and protect his vested property interest.

20. **This case argues** the **unconstitutionality** of an act of the Fla. Attorney General and the State decision as a violation of federal law. It was established as a first impression case, first to happen in Florida and now **enforces as a law,** which abridges the privileges or immunities of citizens of the United States, thus conflicts the 14th Amendment. The relator was ignored or denied a right to present argument on merit of dismissal, on the legitimate interest, since no legitimate interest provided prior to dismissal. The insufficiency occurred along with the divested jurisdiction, which took place without leave of court.

21. The Supreme Court ruled that anyone who claims to have been **singled out for adverse, irrational government action** may bring a lawsuit based on the violation of the **Equal Protection Clause**. Such action may be taken by a legislative, executive, judicial, or administrative body.[4]

22. The Statute of Limitation is based on tort claim. The Florida State has four-year statute of limitation. The cause of action accrues when "the plaintiff knows or has reason to know of the injury which is the basis of the action" (Cox v. Stanton, 529 F.2d 47 [4th Cir. 1975]). The Fla. Attorney General dismissed it without legitimate interest, without leave of court, on July 18, 2013 as a non-party to the case (not in prosecutorial role). After dismissal, the Fla. Attorney General filed two Writ Prohibitions on October 2 (Case No. 1D13-4782) and October 11, 2013 (Case No. 1D13-4937), on the 1st District Court of Appeal (Fla. 1st DCA) to prevent the trial court review of the dismissal. The Fla. 1st DCA held in both cases, that the trial court needs to decide on relator's case first. The latter decision was on October 7, 2014. By that time a new Judge was assigned at the trial court and she did not move forward

---

[4] *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000): "'"[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'"

with prior scheduled hearing, instead she ruled on **December 17, 2014** that the trial court has nothing to do with the case because it was dismissed and the jurisdiction divested. This was the first time the trial court considered the case due to the two prior writ of prohibitions (Case No. 2009-CA-1493). The relator appealed. The Fla. 1st DCA confirmed dismissal based on authority, that the dismissal is non-reviewable, not subject to challenge and the jurisdiction was divested, without addressing the merit of the dismissal on valid purpose and rational relation. This was decided by Fla. 1st DCA on February 23, 2016 (Case No. 1D15-213). The Fla. Supreme Court did not recognize jurisdiction as decided on **August 22, 2016** (Case No. SC16-834), which marks the date for the State decision as final. The appellate procedure, the service of motions tolls the time schedule of any proceeding in the Court until disposition of the motion.

23. Plaintiff brings this action under violation of the Due Process Clause, Equal Protection Clause, U.S.C. § 1983 and U.S.C. § 1985 (2) and (3).

24. This Court has jurisdiction pursuant to the following statutes:

A. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

B. 28 U.S.C. § 1343 (3) which gives district courts jurisdiction over actions to secure civil rights extended by the United States government, to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

C. 28 U.S.C. § 1343 (1) which gives district courts jurisdiction to recover damages over deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42.

D. 28 U.S.C. § 1343 (2) which gives district courts jurisdiction to recover damages over actions by any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent.

25. Venue is appropriate in the judicial district under 28 U.S. Code § 1391(b) (1) It is the judicial district where one of the defendants reside and the action took place.

26. Venue is appropriate in the judicial district under 28 U.S. Code § 1391(b) (2) as the substantial part of the events and omission giving rise to the claim occurred.

27. Venue is appropriate in the judicial district under 28 U.S. Code § 1391(e) (1) as one of defendants is an employee of the Florida State executive branch.

28. Under 42 U.S.C. § 1983 that provides a federal cause of action for the **deprivation of rights** secured by the United States Constitution.[5] Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979) explains that 42 U.S.C. § 1983 was enacted to create a private cause of action for violations of the United States Constitution. 42 U.S.C. § 1983 is vehicle enforcing existing federal rights. It provides a private cause of action for the deprivation, under color of state law, of any federal statutory right.

---

[5] Livadas v. Bradshaw, 512 U.S. 107, 132 (1994) :Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States, and we have given that provision the effect its terms require, as affording redress for violations of federal statutes, as well as of constitutional norms.

# PARTIES

29. The Claimant / Plaintiff is a citizen of the United States who resided in California when the event took place in Florida as the Florida State official's act abridged the privileges and immunities of the citizen.

30. **Defendant** Honorable Florida Attorney General in her **individual/personal capacity** under color of law as abridged the privileges or immunities of citizens of the United States and deprived or caused to deprive liberty and property in the United States. The act was based on authority while she was not a party to the case, not in control of the case[6] and acted without leave of Court to prevent a review of legitimate interest. Even though, the 1st DCA remanded the case back to the circuit court on December 10, 2014, ruling that the court needs to decide on relator's case first and that "**the hearing on the motion to strike was to be held as previously scheduled.**" as ordered by Judge Van Nortwick on October 7, 2014 (Judge Benton concurring, Judge Thomas dissenting), the Fla. Attorney General ignored it and continued to argue that the dismissal divested jurisdiction to review. A **personal-capacity action** is defined when an official caused the alleged constitutional injury. Because of her action, the divested jurisdiction, the 1st DCA was unable or unwilling to protect federal rights. The Fla. Attorney General filed writ of prohibitions to prevent hearing and a review of dismissal act while did not present legitimate interest, thus deprived statutory due process and did not let procedural review of the legitimate interest. Employees of executive branch agencies may not be entitled to absolute immunity. The Fla. Attorney General did not act in prosecutorial role. She acted under executive branch as a non-party to the case without leave

---

[6] Only the actual participants can control the Qui Tam / FCA litigation. (United State ex rel. Eisenstein v. City of New York 556 U.S. 928 (2009)).

of court. Neither **qualified** `good faith, reasonable grounds' **immunity** applies**,** as a prosecutor would enjoy qualified immunity when carrying out administrative or investigative function but **not in violation** for statutory and **constitutional right, such as the violation of the 14th Amendment due process and equal protection clauses** - the most utilized of all constitutional provisions - or **preventing access to court, which is fundamental right.**

31. According to *Butz* v. *Economou,* 438 U.S., at 512, **absolute immunity** for Judges and prosecutors in prosecutorial role comes that jurors are carefully screened to remove all possibility of bias. Witnesses are, of course, subject to the rigors of cross-examination and the penalty of perjury. Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decision making process, there is a less pressing need for individual suits to correct constitutional error. The Fla. Attorney General did not intervene in the Claimant's case. She was not prosecuting the case. Her multiple acts of writ of prohibition, the act without leave of court and the divested jurisdiction to review legitimate interest **removed every part of judicial process to grant absolute immunity**. The act prevented accurately determining guilt or innocence. Pursuing legal remedy was granted for the relator already, the relator was given right for, but then, after years of procedures, it was arbitrarily dismissed by non-party without due process and equal protection, without sufficient checks. Since the Fla. Attorney General declined to intervene, the relator was the prosecutor, the relator presented evidence during discovery, he defended Motorola's motion to dismiss, he was ready to present evidence that an affidavit is filed with incorrect statements and the trial was about to take place.

32. In Hafer v. Melo, 502 U.S. 25 (1991), the Courts held that "§ 1983 was enacted to enforce provisions of the Fourteenth Amendment against those **who carry a badge of a**

**State** and represent it in some capacity, whether they **act in accordance with their authority or misuse it.**" A state official cannot be immunized from personal liability under § 1983 solely by virtue of the "official" nature of their acts. **The Eleventh Amendment does not bar § 1983 personal-capacity suits against state officials in federal court.** In Hafer v. Melo, the Court held: "State officers may be held personally liable for damages under § 1983 based upon actions taken in their official capacities." State officials, sued in their individual capacities, are "persons" within the meaning of § 1983. Unlike official-capacity defendants, who are not "persons" because they assume the identity of the government that employs them. Moreover, § 1983's authorization of suits to redress deprivations of civil rights by persons acting "under color of" state law means that the Fla. Attorney General may be liable for discharging relator's assignment, and depriving the right to proceed with the case to pursue remedies for himself (and for the State). The Fla. Attorney General's act without due process and equal protection is precisely because of her authority as a State Attorney General. The aberrant act as a first impression case was not a State policy and it was not in accordance to statutes, which gave right to the relator and assured civil rule procedures. Personal-capacity suits seek to impose individual liability upon a government officer for actions taken under color of state law. On the merits, to establish *personal* liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. This was not a policy of the State what the previous Attorney General would have followed, as he did not intervene either and did not use actions without leave of Court, without due process. The Fla. 1st DCA's marking of **first impression case** also supports that this has not been done in the State of Florida and it is not a State policy. Furthermore, the Fla. 1st DCA, in response to the Fla. Attorney General's emergency writ of

prohibition, advised her on October 7, 2014 that **her action is against state policy** and **ruled to hold hearing** (Case No. 1D13-4937). In Hafer v. Melo, the Court held that State executive officials are not entitled to absolute immunity for their official actions:

> "We hold that state officials, sued in their individual capacities, are "persons" within the meaning of § 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the "official" nature of their acts."

33. The dismissal act without leave of Court, without due process, without equal protection and the intentional act to prevent review, to prevent pending trial and to prevent testifying while injuring relator by depriving his vested property interest and liberty by narrowing economic opportunity is not something to encourage of as an exercise of official authority for **qualified immunity** consideration. The intentional act and the failure to apply independent judgment was not in good faith on reasonable grounds. The Fla. Attorney General's arguments in briefs relied on federal cases[7], which described the FCA dismissal standards, but she omitted crucial conditions of dismissal from her arguments. She also must have known that the affidavit filed by the Florida Department of Law Enforcement (FDLE) project manager had incorrect statements. The Fla. 1st DCA, in response to the Fla. Attorney General's emergency writ of prohibition, also advised her to hold hearing.[8] The dismissal on unconstitutional ground was deliberate. She intentionally divested jurisdiction to prevent review. Officials of the Executive Branch exercising discretionary functions did not need the

---

[7] Ridenour v. Kaiser-Hill Company, LLC., 397 F.3d 925, 932 (10th Cir.2005) which referred to Sequoia v. Baird-Neece, 151 F.3d at 1145. Both cases thoroughly analyzed dismissal standard and the crucial conditions: the legitimate purpose, rational relation and opportunity to challenge.

[8] Judge Van Nortwick also advised the Fla. Attorney General that "The writ is very narrow in scope and operation, and it must be employed with caution and utilized only in emergency cases to prevent an impending injury where there is no other appropriate and adequate legal remedy. Mandico, 605 So.2d at 853–54. There is no precedent for using this writ as a means of considering a matter not ripe for review." (BENTON, J., concurs, and THOMAS, J., dissents)

protection of an absolute immunity from suit, but it is a **qualified immunity only** if it is based on good faith and reasonable grounds. An **ignorance of the law** is explicitly equated with "**actual malice**." The Fla. Attorney General reasonably should have known that the action she took would violate the constitutional rights of the relator - even the Fla. 1st DCA advised her to hold hearing and advised that the emergency writ of prohibition to prevent review is **unprecedented**, but she still took the action with the malicious intention by divesting jurisdiction to review legitimate interest, acting without leave of Court and to cause a deprivation of constitutional right and injury after years of burden taken by the relator on his own to get the case to trial.

34. Further **analyzing qualified immunity in personal-capacity**, the action in question violated constitutional right, due process, equal protection, access to court and violated clearly established law. The action was taken **maliciously** by ignoring federal law and **knowingly, intentionally** ignoring the Fla. 1st DCA court order to hold hearing in response to the Fla. Attorney General's emergency writ of prohibition. Federal cases (Ridenour v. Kaiser-Hill or Sequoia case) **clearly established** that the government can dismiss a meritorious qui tam action over a relator's objections, **where the government offers reasons for dismissal that are rationally related to a legitimate government interest and afford protection against fraudulent, arbitrary and capricious, or illegal dismissal**. It is also established in Sequoia case that "[t]he same analysis is applied to determine whether **executive action** violates substantive due process. See e.g., Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990)." It is also clearly established in Lockary v. Kayfetz, that **for non-fundamental right**, a deprivation requires substantive due process. In addition, the deprivation of whom were already given right, requires the procedural due process (prior

17

notice then hearing) and equal protection of law, since those were given right and they developed property interest. It also established that The Supreme Court has interpreted the **Fifth Amendment** for the **Federal** Government and **Fourteenth Amendment** for the **State identically**. As Justice Felix Frankfurter once explained: "To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is too frivolous to require elaborate rejection." Legal studies available for public (for example, https:// www.law.cornell.edu/wex/due_process) also explains the due process. The Fla. Attorney General also indicated and knew that discovery process and getting the case ready for trial is expensive. She also knew that the relator did all that and got the case ready for trial on his own burden and sacrifices as right was given to the relator to pursue remedies for himself and for the State. Removing such right impacted the relator in **in a grave way**. Process was due before the government could take an action that affected a citizen **in a grave way.** Deprivation of **significant property interest** requires **procedural due process**, the "opportunity for notice and a hearing prior to the deprivation". ( Lockary v. Kayfetz, 917 F. 2d 1150, 1155 (9th Cir.1990) ). The Fla. Attorney General also knew that the affidavit filed by the FDLA project manager had incorrect statements. She also knew about cabinet documents that AFIS product was scheduled to cost $7.4 million but ended up costing nearly $19 million for unscheduled maintenance fee and then for repurchasing the product from MorphoTrak. It is a **reasonable expectation** that a State Attorney General should and must know about due process and equal protection of law. A reasonable official should have believed that the conduct in question violated clearly established law. Absent to reasonable grounds for the belief formed at the time of the action and in light of all the circumstances then present, the act does not reflect any basis for qualified immunity. Further court review

18

on merit of legitimate interest was declined after the time of the action, due to divested jurisdiction because the dismissal action took place without leave of court and because of multiple writ of prohibitions to prevent review of legitimate interest and false claims. The trial court stated: "Because this Court no longer has jurisdiction, there shall be no further proceedings in this matter." (December 17, 2014, Case No. 2009-CA-1493). Thus the Fla. Attorney General not only failed to acknowledge relevant federal law but also acted with full force under the color of law to hide these from review, disregarding constitutional rights, and vested property.

35. The Fla. Attorney General acted under the color of state law by exercising power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, while ignored due process and equal protection clauses of federal constitutional law, the 14th Amendment Section 1. She argued that it would apply only to fundamental right. However, federal Courts held that those involving **non-fundamental rights, the minimum** scrutiny is the analysis involves asking simply whether the action is **rationally related** to a **legitimate** government purpose. For procedural due process purposes, a deprivation of property occurs when a person has an **entitlement** - having right to something or **legal relationship with the state** - and that entitlement is not fulfilled, such as the assignment and an early termination by State Government. The U.S.C. § 1983 provides a remedy for deprivation of constitutional rights when that deprivation takes place under color of any statute, ordinance, regulation, custom, or usage of a State by whatever instruments or in whatever modes that action may be taken as a State acts by its legislative, its **executive**, or its judicial authorities.

19

36. In Ex Parte Virginia, 100 U.S. 339 (1879), the U.S. Supreme Court found that the

prohibitions of the Fourteenth Amendment have reference to actions of the political body

denominated by a State, by whatever instruments or in whatever modes that action may be

taken but must act upon the person, even though a State acts by its legislative, its **executive**,

or its **judicial** authorities:

> "A State acts by its legislative, its executive, or its judicial authorities. It can act in no
> other way. The constitutional provision, therefore, must mean that no agency of the State,
> or of the officers or agents by whom its powers are exerted, shall deny to any person
> within its jurisdiction the equal protection of the laws. Whoever, by virtue of public
> position under a State government, deprives another of property, life, or liberty, without
> due process of law, or denies or takes away the equal protection of the laws, violates the
> constitutional inhibition; and as he acts in the name and for the State, and is clothed with
> the State's power, his act is that of the State. This must be so, or the constitutional
> prohibition has no meaning. Then the State has clothed one of its agents with power to
> annul or to evade it.
> But the constitutional amendment was ordained for a purpose. It was **to secure equal
> rights to all persons, and, to insure to all persons the enjoyment of such rights**,
> power was given to Congress to enforce its provisions by appropriate legislation. Such
> legislation **must act upon persons**, not upon the abstract thing denominated a State, but
> upon the persons who are the agents of the State in the denial of the rights which were
> intended to be secured."

37. **Defendant** Motorola Solutions, Inc. - Incorporated in Delaware - as a State actor under

U.S.C § 1985 (2), conspire to interfere with civil right U.S.C § 1985 (3) and U.S.C. § 1983

State Actor Doctrine. As the Fla. Attorney General failed to exercise independent judgment,

Motorola and the Fla. Attorney General became each others agent, acted in concert

narrowing economic opportunity for the relator. First, Motorola caused to terminate the

Claimant's position and then the Fla. Attorney General arbitrary and irrationally dismissed

the FCA case without due process while the case was scheduled for trial to address remedies.

The **Fla. Attorney General** as a **non-party** (non-prosecutor) to the case and **Motorola** in

Florida State **conspired to deter**, **by force of authority** under the color of law, the relator as

a witness in State Court of the United States **from attending and testifying during the due**

20

**corse of justice to pending matter scheduled for trial** and this act **injured** the relator as the party and as the witness in his person or property by the removal of his vested property interest without due process, without allowing protecting his vested property interest. The act prevented review of false statements filed on Court in an affidavit and prevented reviewing the release of approximately $11.5 million for unscheduled maintenance and repurchase of the AFIS matching system product. A private party (corporation) may be considered to have acted under color of state law when it engages in a conspiracy or acts **in concert** with state agents to deprive one's constitutional rights ( Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142, 151 (1970) )

38. Deprivation of federal rights by a private party can constitute "state action" if the State government has **participated in joint activity to a degree that the actions of one party can be attributed to the other**, acting **in concert causing deprivation**, or knowingly accepted the benefits of an unconstitutional practice. The state actor, **Motorola benefited** relying on Fla. Attorney General's assistance to prevent hearing and trial, reduce its contractual obligation but to receive full payment even if the delivered product missed contract specification and needed to be repurchased. The case was scheduled for trial as an order, a ruling that has adversely impacted the defendant Motorola, but the dismissal injured the relator instead. The order for trial proceeding was prevented by the Fla. Attorney General's dismissal. Amicus Curiae represented Motorola's interest with its conflicting arguments.[9] They **influenced** the Fla. Judicial Branch and the Fla. Attorney Genera's briefs while **propagated** misconstrued decisions and **omitted** legitimate interest, rational relation

---

[9] Amicus Curiae arguments were conflicting and misconstrued because lifted out and construed statements from cases different from the case at bar or misconstrued decisions and omitted legitimate interest and rational relation test of dismissal from similar rulings.

(substantive due process) requirement, and omitted the process of affording protection against fraudulent, arbitrary and capricious, or illegal dismissal (procedural due process) requirement as a **crucial conditions of dismissal from federal rulings**. The false and erroneous construction and omission from federal examples were copied into the Fla. Attorney General's brief and later into 1st DCA opinion. **The injury caused was aggravated in a unique way by the incidents of governmental authority**. In Dennis v. Sparks, 449 U.S. 24, 28-29 (1980), a State court injunction had been corruptly issued as the result of a **conspiracy between** a judge **and a private party**, which conspired to narrow economic opportunity of a claimant. It caused deprivation of properties without due process of law. The judge was immune from liability in section 1983 suit, enjoying absolute immunity from damages liability in judicial capacity, but the private party who conspired with the judge had liability under section 1983. The court held, to act "under color of" state law for 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents. **Private persons, jointly engaged state officials in the challenged action, are acting "under color" of law for purposes of 1983 actions**. Motorola and its Amicus Currier representation influenced dismissal while misconstruing and omitting crucial part, which is more than just being on the "winning" side of the Fla. Attorney General decision. Or they extended the trial length so that the Fla. Attorney General can reject trial based on lengthy trial. Originally, he Fla. 1st DCA order was to hold hearing. Instead of following these orders, actions caused the relator to be injured, the retaliation culminated for pursuing given rights and for fighting against fraud. The private party has damages liability for conspiracy and injury even if state agent acts in personal-capacity, official-capacity or in judicial-capacity. Even if the state agent enjoys

immunity, a private party, who corruptly conspire, is not insulated from damages liability. In personal-capacity, the state agent and private party may share damage liability for conspiring to cause deprivation without due process. for causing injury in person or property, deprivation of vested property interest and narrowing economic opportunity.

39. **Defendant Florida Attorney General** in her **official capacity** after the first impression case became a law while the Fla. 1st DCA was unable or unwilling to protect federal rights, such as the due process and equal protection clauses. This can become an ongoing violation of federal law. When a State deprives a person of property without just compensation, due process, it demands a remedy — state sovereign immunity notwithstanding. Rights for which the Fourteenth Amendment itself provides a cause of action cannot be shielded from the courts. State sovereign immunity does not extend to cases where a plaintiff alleges the State's action is in violation of the federal or State constitution.

40. If the State or local government entities receive federal funding to acquire or maintain public safety equipment, they may not claim sovereign immunity while recklessly spending that fund. Such funds intend to serve general public purposes. There is a federal interest for public safety equipment in national program.

41. The Fla. Attorney General's action in her personal capacity became a state law after this first impression case, and it became final, thus it **impacts cases to come in official capacity**, putting relators in harm's way, by dismissing cases without legitimate interest and without due process. In **official-capacity**, the Claimant can seek relief characterized as **prospective on ongoing violation of federal law**[10], to seek injunctive and declaratory relief. An order

---

[10] Doctrine of Ex parte Young. Under *Ex parte Young,* an unconstitutional enactment is `void' and therefore does not impart to the officer any immunity from responsibility to the supreme authority of the United States. It is necessary to permit the federal courts to vindicate federal rights and hold state officials responsible.

entered against the agency head in her or his official capacity will **bind any successor officer**.

42. According to Ex parte Young, 209 US 123 analysis, a State Attorney General's action narrowing economic opportunity causing deprivation of properties without due process is **confiscatory**.[11]

43. Ex parte Young opinion categorized cases as personally acting under color of law associated with suits against the person (addressed above in paragraphs 30 - 36); or acting executing an unconstitutional legislative enactment associated with suits against the State in official capacity and used the latter category, since no relief was sought against the State Attorney General individually in that case. Ex parte Young referred to *Smyth* v. *Ames,* 169 U.S. 466 (1898) regarding to the Eleventh Amendment :

> "It is the settled doctrine of this court that a suit against individuals for the purpose of preventing them as officers of a State from enforcing an unconstitutional enactment to the injury of the rights of the plaintiff, is not a suit against the State within the meaning of that Amendment."

Ex parte Young also held that:

> "The various authorities we have referred to furnish ample justification for the assertion that individuals, who, as officer of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act, violating the Federal Constitution, may be enjoined by a Federal court of equity from such action."

Ex parte Young also held that:

> "In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party."

---

[11] Ex parte Young, 209 US 123: "We also hold that the Circuit Court had jurisdiction under the cases already cited (and it was therefore its duty) to inquire whether the rates permitted by these acts or orders were too low and therefore confiscatory,"

In Claimant case, the Fla. Attorney General caused the deprivation in concert with a private

party, thus connection exist and **can be defendant in official capacity**:

> "The fact that the state officer by virtue of his office has some connection with the
> enforcement of the act is the important and material fact, and whether it arises out of the
> general law, or is specially created by the act itself, is not material so long as it exists."

> "If the act which the state Attorney General seeks to enforce be a violation of the Federal
> Constitution, the officer in proceeding under such enactment comes into conflict with the
> superior authority of that Constitution, and he is in that case stripped of his official or
> representative character and is subjected in his person to the consequences of his
> individual conduct. The State has no power to impart to him any immunity from
> responsibility to the supreme authority of the United States."

44. The fundamental right of access to the courts without obstruction of justice and without

injuring the relator, constitutes a valid exercise of Congress's enforcement power under the

Fourteenth Amendment.

45. The court access has to be at meaningful time.[12] The Fla. Attorney General did not

provide prior notice and did not provide a legitimate interest, for which Claimant could have

responded **prior to divesting jurisdiction.** The hearing and the trial was prevented by her

actions. The 1st DCA was unwilling or unable to allow challenging the dismissal due to

divested jurisdiction, while ignoring merit, and while the dismissal happened without leave

of court by a non-party to the case.

---

[12] At a minimum, due process requires that an affected individual be **given notice** that **government
intends to take some action and an opportunity to be heard at a meaningful time and place.** The
**essential requirements** of procedural due process are **notice** and an **opportunity to respond**. The
**opportunity to present reasons,** either in person or in writing, why the proposed action should not be
taken - is a **"fundamental" due process requirement** ( Armstrong v. Manzo, 380 U. S. 545, 380 U. S.
552 (1965) ).

## STATEMENT OF FACTS

46. As a former Motorola employee, Claimant worked on overseeing Florida State product requirements for the Automated Fingerprint Identification System (AFIS) product, the AFIS test results and its compliance to the State requirements. The product missed several State requirements. Claimant voiced his concerns before the factory acceptance and through escalation process. He exhausted all options to address it. Shortly after Motorola Biometric Division transferred to MorphoTrak, his position got terminated. Claimant as a relator pursued a Qui Tam / False Claims Act (FCA) on Florida State Court against Motorola, who claimed full compliance to the State requirements of the AFIS product for payment but the product was not able to perform according the State's requirements. The court determined that the case had merit. The relator successfully conducted discovery and defended Motorola's motion to dismiss. The relator conducted the case without the Fla. Department's intervention.

47. After years of legal procedures the case was scheduled for trial and became a vested property interest to address remedies when the Honorable Florida Attorney General dismissed it with prejudice, without legitimate interest, without prior notice, without leave of court, on July 18, 2013 as a non-party to the case (not in prosecutorial role) applying the "Notwithstanding objection of the person initiating" statement, similarly to prior federal FCA decisions but without valid and legitimate purpose and without allowing the review of the dismissal on merit. This was inconsistent with the federal decisions, because in the referred federal cases, the government can dismiss qui tam action over the relator's objection **where the government offers reasons that are rationally related to a legitimate government**

26

**interest,** as the **substantive due process** and affords a **procedural due processes** to review legitimacy for taking away a given right.[13]

48. After dismissal, the trial court scheduled a hearing but the Fla. Attorney General filed an Emergency Petition For Writ of Prohibition on October 11, 2013, on the 1st District Court of Appeal (Fla. 1st DCA) to restrain circuit court Judge to exercise jurisdiction, to review the dismissed action (Case No. 1D13-4937). (This was the second time of premature writ of prohibition filing.) The 1st DCA remanded the case back to circuit court on December 10, 2014 that the court needs to decide on relator's case first and that **"the hearing on the motion to strike was to be held as previously scheduled."** as ordered by Judge Van Nortwick on October 7, 2014 (Judge Benton concurs, Judge Thomas dissents). After a newly assigned Judge at the trial court, she did not move forward with prior scheduled hearing, instead she ruled on December 17, 2014 that the case divested jurisdiction by the Fla. Attorney General dismissal and because the trial Court "no longer has jurisdiction, there shall be no further proceedings in this matter." This was the first time the trial court considered the case due to the two prior writ of prohibitions (Case No. 2009-CA-1493). The Claimant / relator appealed.

49. During the appeal process (Case No. 1D15-213) , Fla. Attorney General Reply brief tried to justify dismissal based on an affidavit filed on February 19, 2013 by the Florida Department of Law Enforcement (FDLE) Project Manager that the Project Manager was

---

[13] Sequoia v. Baird-Neece, 151 F.3d: the Government can dismiss a meritorious qui tam action over the relator's objection **where the government offers reasons that are rationally related to a legitimate government interest** (at 44). The government may dismiss the action "notwithstanding the objections of the person initiating the action if the **person has been notified by the Government** of the filing of the motion and the **court has provided the person with an opportunity for a hearing on the motion."** (at 14). These are due process requirements. The Supreme Court established that it interpreted the **Fifth Amendment** for the **Federal** Government and **Fourteenth Amendment** for the **State identically.**

pleased with the product. This was inconsistent with cabinet documents showing that "the system is not performing at optimal or supportable levels" or that:

> "not performing in a stable manner and requires frequent restart" or "FDLE will not be able to process biometric searching and matching requests for law enforcement and employment / licensing programs in a timely manner. Latent print searches in support of criminal investigations and retained print processing required by various state statues will be delayed or not performed at all." ( FDLE Cabinet Package 12-11-12 ).

50. Florida State had specific requirements about accuracy, processing speed, quality standards and required the capability of 20% of fingerprint record growth per year. These are failed according the cabinet documents and internal test results.

51. In the affidavit, the Project Manager referred that Motorola was selected from Invitation to Negotiate, but the project was a single or sole source contract. The Project Manager stated that project did not require Software Engineering Institute (SEI) quality standards. This was also incorrect, because the Florida State Requirements called out the same quality standards as adhered to Software Engineering Institute standards. The Project Manager stated that FDLE did not had to demand any warranty work, but the cabinet documents showed millions of dollars for maintenance and technical support fees (FDLE Cabinet Package 02-24-10, 12-07-10, 03-09-11) reflecting substantial spending on the system to keep it on life support, then they decided to repurchase the AFIS matching system (Biometric Identification System, BIS) and allocated additional funds.

52. The Project Manager stated that he did not know the relator and the relator did not participate in FDLE testing in Florida, but this was irrelevant since the relator worked on overseeing the Quality Assurance (QA) test and reviewed test results against the Florida State AFIS requirements in the Anaheim, California office of Motorola. Despite the Project Manager's statement, the relator had formal role in the project as he had created the technical

requirements for the software engineers and had access to the FDLE contract requirements and its amendments.

53. The pretrial and trial was already scheduled to resolve any differences might have been left after discovery, but the Fla. Attorney General dismissal - without leave of court, without prior notice to the relator, without presenting legitimate interest and rational relation prior to dismissal - divested jurisdiction to review. This created a **procedural insufficiency** to review inconsistencies Motorola and FDLE may have had. Fla. Attorney General dismissal act "silenced" the relator, it prevented the relator / witness to testify on Court. During the appeal of the dismissal, the Fla. 1st DCA decided not to construe opinion on merit and even suppressed merit discussion during the oral argument, but construed substantive authority to allow dismissing, which prevented the relator to challenge the dismissal on higher courts.

54. The Florida Department of Law Enforcement (FDLE) Commissioner, Gerard Bailey responded to a news agency on or about March, 2014 acknowledging a close to one percent (1%) fingerprint search error (missing candidates) rate (99% accuracy) in an open letter to the press. Please note that the contract called for 99.9% accuracy. This could have been a substantial more number of missed fingerprints for thousands of daily searches.

55. The Fla. Attorney General and Assistant General, John Booth noticed some of the inconsistencies of the project manager's affidavit but they did not make correction in court documents. (E-mail from John Booth Assistant General sent to relator's counsel on May 17, 2013 with Subject: Correction to Affidavit of Charles Schaeffer). The relator asked to strike the affidavit on August 19, 2013, but the Fla. Attorney General's dismissal without leave of court, the writ of prohibitions and the divested jurisdiction prevented it.

56. Despite the Fla. 1st DCA October 7, 2014 ruling to hold the hearing, The **Fla. Attorney General** as a **non-party** (non-prosecutor) to the case and **Motorola** in Florida State **conspired to deter, by force of authority** under the color of law, the relator as a witness in State Court of the United States **from attending and testifying during the due corse of justice to pending matter scheduled for trial.** The Fla. Attorney General and Motorola acted in concert, prevented review and deprived relator's rights. The act caused harm preventing access to court at a meaningful time, certainly before divesting jurisdiction to review on merit. Access to court is a fundamental right.

57. In the Fla. Attorney General's Answer Brief (Case No. 1D15-213, filed on June 18, 2015) in response to the relator's appeal of the trial court decision of divested jurisdiction, the Fla. Attorney General stated that the due process protects only **fundamental right**, thus she did not think that relator's case would require due process. She did not deny, but confirmed the intention to deprive. However, several federal cases ruled that **process is due if rights were involved,** when a right is given and then terminated by executive action. A fundamental right would require a strict or heighten scrutiny. It is arguable what would be the appropriate height level of scrutiny to review when a deprivation drives the relator into life-endangering homelessness without remedies, and causes loss of properties and liberties by limiting employment opportunity. Regardless, the **rational basis review** in the U.S. constitutional law is the minimum and the default standard even if it is not a fundamental right. Due process is not limited to fundamental right. It goes beyond that to achieve **fundamental fairness across multiple states** to use established procedures and apply valid pre-existing laws in accordance with the Bill of Rights and laws passed pursuant to constitutional power. The adoption of 14th Amendment into the US Constitution is not limited to mid-19th century conceptions of

"liberty" and "due process of law". The rational basis review is adopted by federal False Claims Act (FCA) cases and it applies to the States through the 14th Amendment to determine that the executive action "rationally related" to a "legitimate" government interest. This is a **substantive due process**. In addition, the deprivation of significant property interest requires **procedural due process**, the opportunity to notice and hearing **prior the deprivation**. In FCA / Qui Tam case, the relator pursues remedy on his own burden, with career-wise harmful exposure and sacrifices while establishing a vested property interest. The relator pursued the case ready for trial with **vested property interest** and **probable value of remedy**.[14]

58. In the Fla. Attorney General's Answer Brief, she misconstrued no due process requirement based on Board of Regents of State Colleges v. Roth  408 U.S. 564 (1972). When a teacher had time-bound assignment, a series of one year contract (non-tenure system) limited to one year assignment, then the contract needs to be renewed, therefore non-tenure teacher procedural due process right of hearing may not be required at the end of the year. However, terminating a continued employment or tenured system, a procedural due process, based on the right of hearing accompanied with a statement of legitimate reason is required. During a False Claims Act case, the relator assignment is not limited to a year. The relator

---

[14] According to Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990), "Rational relation test will not sustain conduct by state officials that is malicious, irrational or plainly arbitrary". Omitting the hearing requirement creates a **procedural insufficiency**, thus the **hearing requirement is justified**. In Lockary v. Kayfetz, as a reference case of executive action applied by the FCA Sequoia Court, the interest in water for real-estate development is not a fundamental right, but deprivation requires substantive due process for the residents. In addition, the deprivation of residents, who were already given right to receive water, requires the procedural due process (prior notice then hearing) and equal protection of law, since those residents were given right and they developed property interest just as a relator is given right to proceed with trial and had an invested and vested property interest.

was **given right** to pursue remedy **for himself and** for the State on his own burden. Such reliance must not be arbitrarily undermined. Taking away that right requires due process.

59. In the Fla. Attorney General's Answer Brief, she misconstrued declining Sequoia test standard by referring to Swift v. United States , 318 F.3d 250, 252 (D.C. Cir. 2003) where the case was dismissed under seal before serving the defendant, before giving right to the relator, before generating vested property interest.[15] In contrast to the Swift case, the Claimant's case already served and he started to pursue remedy with given right. The case had merit and it was scheduled for trial. The case had vested property interest. The relator's case was different from the Swift case.[16]

60. In the Fla. Attorney General's Answer Brief, she expressed concern of expenses of discovery, but the State did not have such expense. The relator did the discovery on his own burden and expense, without State intervention. The relator was the one who had vested property interest in the FCA action.

61. The Fla. Attorney General also expressed concern of lengthy trial. Since the relator pursued the case, without Fla. Department intervention, this should not had been an issue. Furthermore, the relator's counsel asked for few days time for the trial, while Motorola tried to stretch it out for weeks. Motorola counsel asked for two-week trial. Then the Fla. Attorney General argued it as a reason to avoid lengthy trial, while Motorola extended the trial length. They acted **in concert** to prevent trial.

---

[15] But even that dismissal under seal could be reviewable when evidence of fraud exist.

[16] In Sequoia and Lockary case, demonstrated that **for non-fundamental right**, the deprivation of whom were already given right, requires the procedural due process (prior notice then hearing) and equal protection of law.

62. The Fla. Attorney General argued Florida Rules of Civil Procedure governing voluntary dismissals and divested jurisdiction based on Pino v. Bank of New York, 121 So.3d 23, 32 (Fla. 2013), but that case was **dismissed by the plaintiff** in **agreement with the defendant** while documents were filed fraudulently. It was dismissed by both of the **parties**. In Claimant's case, the Fla. Attorney General was not a party to the case, because she did not intervene. In Pino case, the plaintiff did not lose his home (the bank did not foreclose) before dismissal. At the case at bar, the Claimant lost his home before dismissal, because the narrowed economic opportunity due to lengthy legal procedures, he had to sell in response to foreclosure notice and he had to use sales proceeding to rent before he became homeless. It already had the confiscatory effect, by the narrowed economic opportunity for proceeding with the Qui Tam case. It had a substantially vested interest. The court scheduled the case for trial to pursue the remedies, which was prevented by a non-party to the case. Motorola as a party tried to dismiss but the Court declined to dismiss the case. In United States ex rel. Eisenstein v. City of New York, 556 U.S. 928 (2009), it was decided that only the actual participants can control the Qui Tam litigation. The Fla. Attorney General, as a non-party to the case, and the non-intervention would leave the relator in control. Thus, the Claimant case was different from Pino case, which was dismissed by the parties in agreement. The Pino case did not have elements to violate dismissal rules as described in Florida 1.420 Dismissal Actions, which allows **dismissal only by parties** and allows dismissal by **notice of hearing on the motion shall be served** as required under rule 1.090(d) or when seeking affirmative relief has shown no right to relief. On the other hand, these dismissal rules were violated in Claimant's case, as the Fla. Attorney General did not give prior notice and the relator received right to pursue remedies and the case was scheduled for trial as an order, a ruling

that has adversely impacted the defendant Motorola, but instead, the dismissal suffered the

relator. Applying the Pino case creates a loophole in the judicial review process when the Fla.

Attorney General dismiss a case without leave of court along with fraudulent filings, because

of divesting jurisdiction to review.

63. The following events **reflect** that the Florida Attorney General **failed to exercise**

**independent judgment while the court determined that the case had merit and**

**scheduled it for trial**:

    - the Fla. Attorney General's misconstrued statements in the answer briefs, as explained
above in paragraphs 57 - 62, while attempted to justify dismissal after divesting
jurisdiction;
    - the ignorance to the inconsistency of FDLE Project Manager's affidavit and the cabinet
documents;
    - the two consecutive filings of writ of prohibition to prevent review;
    - the ignorance of Fla. 1st DCA order to hold hearing in response to writ of prohibition;
    - the dismissal without prior notice, without leave of court, without legitimate interest,
without rational relation;
    - the ignorance to substantive and procedural due processes;
    - disregarding the Constitution 14th Amendment and relevant decisions;
    - the deprivation of property interest, vested, invested and liberty;
    - the ignorance of constitutional right while causing loss of properties, forcing the relator
into homelessness;
    - preventing the relator's access to court to review legitimate interest and false statements
by divesting jurisdiction without leave of court;
    - preventing relator testifying on Court for the scheduled trial and injuring the relator /
witness, while the relator received right to pursue remedies.

The Fla. Attorney General and Motorola became agent of each other and acted in concert

under color of law. This is the **essence of a conspiracy** when a combination or agreement

occur to **violate or to disregard the law**.[17]  The Fla. Attorney General **culminated**

**retaliation**. An **ignorance of the law** is explicitly equated with **actual malice**.

64. Every Judges (Judge Jackie L Fulford, Judge Kevin Carroll of the trial court, Judge Van

Nortwick, Chief Judge T. Benton of the appellate court) who ruled in relator's favor was

---

[17] United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc)

replaced thus prevented continuity of overseeing the details of the merit. Judge Bradford L. Thomas delivered a dissent to grant writ of prohibition in the early phase (Case No. 1D13-4937), while majority (CJ. Benton and J. Van Nortwick) remanded the case back to the trial court for hearing. After remand, the newly assigned trial court Judge Angela Dempsey decided no further proceedings due to divested jurisdiction by the dismissal (case no. 2009-CA-1493). Then Judge Thomas got reassigned to the appeal to construe opinion on the decision of Judge Dempsey, and confirmed divested jurisdiction similarly to his earlier dissent opinion but, at this time, other appeal court Judges (CJ. Roberts, and J. Ray) affirmed (Case No. 1D15-213) (En Banc review denied). The jurisdiction is divested causing cancelling the pretrial, trial hearings and further proceeding. The State court **failed to even acknowledge the existence of the constitutional principle**. The relator, now Claimant did not have a **full and fair opportunity to litigate** the issue decided by the State court.

65. The Fla. 1st DCA confirmed dismissal based on the overarching principals of the federal FCA (Case No. 1D15-213). The opinion focused on that the Government can dismiss FCA case and no need to intervene before dismissal. (This would not be an argument in this case as long as there is a legitimate interest to dismiss a case and due process is afforded to review.) However, the Fla. 1st DCA opinion did not address the condition the Government can dismiss, such as valid purpose and rational relation. The Fla. 1st DCA opinion carefully avoided mentioning legitimate interest requirement (substantive due process) as described in Ridenour and Sequoia FCA cases or the requirement of Court review of dismissal in United States v. Océ N.V. while used most of these cases to construe opinion. The Fla. 1st DCA omitted to address that the **executive action** violates the substantive due process.

66. The <u>Sequoia Court</u> concluded the out of context application (without intervention) and a conditional application of U.S.C. § 3730 (c) (2) (A), ("notwithstanding the objection"): the Government can dismiss a meritorious qui tam action over the relator's objection **where the government offers reasons that are rationally related to a legitimate government interest** (at 44).

67. Similarly, in the  <u>Ridenour v. Kaiser-Hill Company, LLC., 397 F.3d 925</u> (10th Cir. 2005). The dissent opinion by Judge Eagan asserted that the majority opinion disregarded the surrounding provisions and context in which the dismissal provision appears (at 48) and this is a iconoclastic statutory conclusion (at 58), which contravenes the express language of the statute as well as the Congressional intent but **concurred in the result because the government had shown good cause** (at 59) or reasonable cause.

68. Judges are divided on the congressional intent whether to use the term "notwithstanding the objection" out of the context from where the Government's right is discussed with intervention, but the Government did not intervene ( 3730 (c) (1) and 3730 (c) (2) (A) ), or consider the valid purpose as a good cause and use implied intervention allowing dismissal under relator's right section 3730 (c) (3). In general, this brings the same result as long as there is a valid purpose for dismissal. The typical example of this is the majority and dissent opinion in the Ridenour v. Kaiser-Hill Company case.

69. The Fla. 1st DCA interpretation of federal cases with "ample support" is misconstrued because it omitted presenting a legitimate interest and omitted to follow procedure to review legitimate interest prior to dismissal. Both substantive and procedural due processes were a common requirement in federal decisions for dismissal without intervention. The Fla. 1st

DCA stated erroneously: "based on our review of the relevant case law interpreting the very similar Federal False Claims Act, we find ample support for our reasoning;"

70. The Fla. Attorney General and later the Fla. 1st DCA applied the concept of "notwithstanding the objections" out of context since the Fla. Department did not intervene, but dismissed without presenting legitimate or valid purpose, rational relation. This has a very different result from the referred federal cases, where the valid purpose was the driving force to dismiss. The arbitrary dismissal without presenting legitimate interest deprived substantive and procedural due processes. The Fla. State **singled out the relator for adverse, irrational government action**, while the relator was given right to proceed.[18]. Without valid purpose and rational relation, the decision resulted in an **arbitrary** and **irrational discrimination** depriving equal protection law. This conflicts **constitutional validity** under the 14th Amendment Section 1, **Equal Protection Clause**.[19]

71. This statutory interpretation **arbitrary nullified** the other **provision**, the right of the relator (68.084 (3)) to conduct the case when the relator proceeds with the action, and **deprived the promised right** without due process. It deprived opportunity to demonstrate that the dismissal is unreasonable, and deprived opportunity to protect vested interest because of the divested jurisdiction without leave of court. This conflicts **constitutional validity** under the 14th Amendment Section 1, **Due Process Clause**.

---

[18] 68.084 (3): "...the person who initiated the action has the right to conduct the action..." The statutes also defined rule of civil procedure, Court oversight (68.083 (2): ..."Civil actions instituted under this act shall be governed by the Florida Rules of Civil Procedure and shall be brought in the name of the State of Florida."

[19] In *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000), the Supreme Court ruled that anyone who claims to have been singled out for **adverse, irrational and arbitrary government action** may bring a lawsuit based on the violation of the **Equal Protection Clause**. In effect, a person can become a "**class of one**."

72. The dismissal without prior notice and without leave of court divested jurisdiction to review on merit. The Florida Supreme Court did not recognize jurisdiction to review it. The U.S. Supreme Court did not select the relator's writ of certiorari filed as pro se. The U.S. Supreme Court's non-review of writ of certiorari is not a matter of right, but of judicial discretion. It did not express the Court's view of the merits of the case. It is likely that Supreme Court would not address federal cause of action on State Court before all options explored on the lower court, the federal court.

73. The dismissal action **deprived significant property interest**. The civil action scheduled for trial is a **vested property** as the State has given right to it. Proceeding with a FCA case as a whistleblower creates an exposure as an "informer", which narrows the opportunities for employment, source of income. It resulted in **loss of income, loss of transportation, and properties** as the relator / Claimant was forced to sell to prevent foreclosure. It forced the relator to an early use of retirement and savings as means of support, and prevented accruing retirement.

74. The narrowed employment opportunity limited to engage in common occupations of life, thus impacted **liberty**. The dismissal was an **action that affected a citizen in a grave way**. Process was due before the government could take an action that affected a citizen in a **grave way**[20]. Deprivation of **significant property interest requires procedural due process**, the opportunity for notice and a hearing prior to the deprivation.[21]

---

[20] Wex Legal Dictionary "Due Process" by Legal Information Institute, https://www.law.cornell.edu/wex/due_process : "Process was due before the government could take an action that affected a citizen in a grave way."

[21] Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990)

75. The Fla. 1st DCA appeal and its oral argument did not resolve procedural insufficiency by itself. It was not based on analyzing legitimate government interest, as it was not presented by the Fla. Attorney General. It did not address procedural hearing requirement on the substantive due process, the valid purpose and rational relation, which due process defined by the U.S. constitutional Rational Basis Review. At a minimum, due process requires that an affected individual be **given notice** that government intends to take some action and an opportunity to be heard **at a meaningful time and place**, certainly **before divesting jurisdiction**. The **essential requirements** of procedural due process are **notice** and an **opportunity to respond**. The Fla. 1st DCA ruling was based on substantive authority to dismiss and divested jurisdiction to review, which deprived the relator of challenging the dismissal bases by merit. It ignored rational bases review, thus the Fla. 1st DCA was unable or unwilling to protect federal law. The **out of context** (without intervention) interpretation of 68.084 (2) ("Notwithstanding the objection") was based on federal decision but disregarded the **condition** of presenting legitimate interest for dismissal :

[Fla. 1st DCA] "Conclusion

The voluntary dismissal by the Attorney General in this case was not subject to challenge by Appellant. Thus, the trial court's decision terminating proceedings in this matter was correct; the court properly ruled that it was divested of jurisdiction when the Attorney General dismissed the action, properly recognizing that the Attorney General "had the authority to file a voluntary dismissal notwithstanding any objections of the Relator pursuant to Section 68.084(2), Florida Statutes." "

76. The act had all the **elements for federal remedy** of § 1983[22], as intended by Congress. **The three circumstances are:** where state **substantive law** was facially **unconstitutional**, where state **procedural law** was **inadequate** to allow full litigation of a constitutional claim, and where **state procedural law**, though adequate in theory, was **inadequate in practice**.

---

[22] As in Allen v. McCurry  449 U.S. 90 (1980) at Page 449 U. S. 100.

77. The Courts apply rational basis review to seek to determine whether a law is "rationally related" to a "legitimate" government interest to test executive action whether those actions be of a substantive or procedural nature. The rational basis test prohibits the State Government from imposing restrictions on liberty that are irrational or arbitrary. It also prohibits removing action without substantive and procedural due process for which the State conferred a right to proceed.

78. The procedural due process (notice and hearing) is also supported by the **Senate Report to the False Claims Amendments Act of 1986,** allowing the relator to **object dismissal without reason**.

79. In Sequoia case, the Court concluded that the judicial involvement **does not contravene the separation of powers principle**. A notice and hearing requirement would not pose significant barriers to the Executive Branch authority. Similarly, he Fla. State authorized judicial oversight.[23] Thus a court review should not be a separation of power issue.

80. A State can elect not to confer a property interest, but it may not constitutionally authorize the deprivation of such interest, once conferred, without procedural safeguard in constitutional term.[24] The adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms. Regardless whether common or statutory law, the right of the relator must be analyzed by the same U.S. Constitution. The fact that the Florida False Claims Act is a "statutorily" created cause of action (rather than a common law action) makes no difference in terms of the relator's constitutionally protected property interest.

---

[23] 68.083 (2): ..."Civil actions instituted under this act shall be governed by the **Florida Rules of Civil Procedure** and shall be brought in the name of the State of Florida."

[24] Logan v. Zimmerman Bush Co., 455 U.S. at 432

81. Fla. State established and now enforces an unconstitutional act under the color of law conflicting the 14th Amendment, which states that **no** State **shall make or enforce any law** which shall abridge the privileges or immunities of citizens of the United States; **nor** shall any State deprive any person of **liberty**, or **property**, without **due process** of law; nor deny to any person within its jurisdiction the **equal protection of the law.**

82. If the Fla. Attorney General or the State does not wish to give right to the relator to proceed with False Claims Acts, **should have done so legislatively** without misleading the relator(s), and do so uniformly, **without arbitrary and irrational discrimination**, without risking the relator's properties, so that relator can avoid unnecessary exposure, limiting employment, loss of wages and loss of retirement.

83. The dismissal act removes **check on corporate or political influence**. The AFIS product scheduled to cost $7.4 million but ended up costing nearly $19 million for unscheduled maintenance fee and then for repurchasing the product from MorphoTrak as shown in Florida State cabinet documents.

84. The Fla. Attorney General dismissal had another unusual circumstance. Around the dismissal, the case disappeared from the docket. After checking with the clerk office, it appeared that the case was sealed by clerical error due to some docket maintenance. As the case was restored in the docket, the relator discovered the dismissal entry and the cancellation of trial. The relator asked the Judicial Assistant, Maryann C. Rybnicky, about the entry, wondering who was the one dismissing his case. She responded that they had the understanding that the case was settled and she sent the relator the Fla. Attorney General's dismissal notice on August 8, 2013. The Fla. 1st DCA also relied on a case related to

settlement along other cases.[25] If a False Claims Act is settled, a court hearing to review the settlement is also necessary. The Fla. Attorney General dismissal without leave of court, valid purpose, rational relation and the divested jurisdiction to review the dismissal prevented determining if there was a settlement and prevented review of fairness. The replacement of the trial court Judge Carroll, whose assistant had the understanding of settlement, also prevented clarification because a the newly assigned trial court Judge, Judge Dempsey, ruled no further proceeding because of the divested jurisdiction (Case No. 2009-CA-1493, December 17, 2014).

85. Federal money could be at stake. For example, if corporations make election contribution, the State Attorney General can make deals and lock out relator without any review process, ignoring the relator / whistleblower statutory and constitutional right. If federal funds used for the project, the State can make the federal Government pay for the concealed corporation misconduct as the State can release additional federal fund to fix problems on the burden of federal Government, while enjoying contribution and benefits from corporations.[26]

86. It severely **undermines False Claims Act's role in combating fraud against Government** and discourages whistleblowers as they face loss of their homes, liberty without due process, while faithfully proceeding with the given rights.

---

[25] In United States ex rel., Schweizer v. Océ N.V., 677 F.3d 1228, 1233 (D.C. Cir. 2012), despite the Fla. 1st DCA claim of an example of non-challengeable dismissal, the case was remanded for Court review of the settlement agreement to challenge. The Government reached an agreement without the original relator and dismissed the case. The case was remanded for review of the settlement agreement pursuant to 31 U.S.C. §3730 (c) (2) (B) requiring a judicial hearing before dismissal.

[26] The press reported that Motorola gave more than $128,000 to candidates and committees helping to reelect Florida Department officials.

87. An act **failing to exercise independent judgment supports an inference of conspiracy with a private party**.[27]

88. Section 1983 actions may be brought to redress constitutional violations effected under color of state law. A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts **in concert** with state agents to deprive one's constitutional rights.[28]

89. A conspiracy is a combination of two or more persons, by concerted action to accomplish some **unlawful purpose**, or to accomplish some **lawful purpose by unlawful means**. So, a conspiracy is a kind of partnership, in which each member **becomes the agent of every other member**. The Fla. Attorney General and Motorola became agent of each other. The essence of a conspiracy is a combination or agreement to violate or to disregard the law. The Fla. Attorney General's act violated the Constitution and federal law in order to protect Motorola's interest.

90. While it is not necessary to prove that each participant in a conspiracy know the exact parameters of the plan, they must at least **share the general conspiratorial objective**. Accordingly, the private party, Motorola, jointly engaged with the state official in the prohibited action, while the relator tried to uncover false claims act, as the relator was given right for by statute, and the Court scheduled the trial. Motorola and the Fla. Attorney General reached the understanding to dismiss and deny rights for the relator. These acts caused the relator loss of employment opportunity, loss of wages, loss or retirement, loss of properties vested in the case. The involvement of a state official conspired an act, which act was a direct

---

[27] United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc).

[28] Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142, 151 (1970)

violation of the relator's 14th Amendment, due process, equal protection rights and violation of fundamental right to access to court.

91. The Supreme Court found that a State due process cannot be less than the federal due process. The Supreme Court has interpreted the **Fifth Amendment** for the **Federal Government** and **Fourteenth Amendment** for the **State identically**.[29]

# STATEMENT OF CLAIMS

## Count I,
## U.S. Constitutional Law Rational Bases Test Omission

92. The Honorable Florida Attorney General omitted the Rational Basis Review from the U.S. constitutional law as the default standard of review that Courts apply when considering constitutional questions, including due process or equal protection questions under the Fourteenth Amendment.[30] Federal Courts applied such a review under rational basis review seeking to determine whether a law is "rationally related" to a "legitimate" government interest, whether real or hypothetical.[31] The rational basis test is applied to both federal law and state law via the Fifth or the Fourteenth Amendment. This test also applies to both

---

[29] As Justice Felix Frankfurter once explained in Malinski v. New York, 324 U.S. 401, 415 (1945), (Frankfurter, J., concurring): "To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is **too frivolous to require elaborate rejection**."

[30] The concept of rational basis review can be traced to an influential 1893 article, "The Origin and Scope of American Constitutional Law," by Harvard law professor James Bradley Thayer.

[31] Rational Basis. Cornell University Law School. Web. 26 Aug. 2015, https://www.law.cornell.edu/wex/due_process : In the the middle of the Twentieth Century, a series of Supreme Court decisions found that the Due Process Clause "incorporated" most of the important elements of the Bill of Rights and made them applicable to the states. If a Bill of Rights guarantee is "incorporated" in the "due process" requirement of the Fourteenth Amendment, state and federal obligations are exactly the same. The clause also promises that before depriving a citizen of life, liberty or property, government must follow fair procedures.

legislative and executive action whether those actions be of a substantive or procedural nature. The Fla. Attorney General and the 1st DCA decision relied on Ridenour v. Kaiser-Hill Company, LLC., 397 F.3d 925, 932 (10th Cir.2005), as the correct standard for Government dismissal but ignored and omitted the rational relation test required for dismissal.

93. The Ridenour case adopted and referred to the Sequoia v. Baird-Neece, 151 F.3d at 1145. Once the Government meets its burden of establishing a rational relationship between dismissal of a *qui tam* action and a valid government purpose, the "**burden switches to the relator** to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." The Sequoia Court decided that dismissal notwithstanding the objection of the relator is **permitted only where** reasons for dismissal offered and rationally related to a legitimate government interest:

> "We conclude that 31 U.S.C. § 3730 (c) (2) (A) permits the government to dismiss a meritorious qui tam action over a relator's objections. **Where, as here, the government offers reasons for dismissal that are rationally related to a legitimate government interest**, the qui tam action may be dismissed."

94. The Ridenour decision concurred the dismissal because the Government showed legitimate purpose. (The majority called it valid government purpose, the dissent called it good cause.) The Court asserted in dissent opinion by Judge Eagan that the majority opinion disregarded the surrounding provisions and context in which the dismissal provision appears (at 48) and this is a iconoclastic statutory conclusion (at 58), which contravenes the express language of the statute as well as the Congressional intent but **concurred in the result because the government had shown good cause (at 59)** or legitimate cause.

95. The Fla. Attorney General's action and Fla. 1st DCA decision left out the "legitimate purpose, rational relation" test but relied on federal decisions which required legitimate

purpose to dismiss. The Fla. 1st DCA opinion argued whether the Fla. Attorney General can dismiss a case during qui tam procedure or argued whether intervention needed first but left out how she can dismiss (present legitimate interest), a crucial element of the federal FCA cases. The legitimate interest was a condition of the federal decisions to dismissal notwithstanding the relator's objection. **This omission rendered the adoption of the federal decision into State decision constitutionally invalid**, it creates a different result. It eliminates the check on corporate or political influence. It masked arbitrary and capricious dismissal and it conflicts civil rights and constitution as detailed below.

96. The federal FCA cases established two step method - valid purpose, rational relation - then the relator's opportunity to demonstrate that dismissal is fraudulent. **The same analysis is applied to determine whether executive action** violates **substantive due process**. See e.g., Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990) and Sequoia Orange Company v. Baird–Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998). This standard also **draws significant support** from the **Senate Report** to the False Claims Amendments Act of 1986, which explained that the **relators may object if the government moves to dismiss without reason**. In United States ex rel. Kelly, 9 F.3d at 756 addressed that **such a rational relation test avoids any separation of powers concerns.**

## Count II
## 14th Amendment Substantive Due Process Omission

97. Courts have split substantive due process cases into two categories: those involving **fundamental rights** and those involving **non-fundamental rights.** The standard of scrutiny is different for each category, but the essential analytical method is the same. **For non-**

**fundamental right**, the analysis involves asking simply whether the statute is **rationally related** to a **legitimate** government purpose.[32]

98. The Fla. Attorney General and Fla. State used the concept of "notwithstanding the objections" out of context (without intervention), but dismissed without presenting legitimate or valid purpose, rational relation, thus omitted substantive due process. This has a very different result from the federal cases, where the valid purpose is the driving force to dismiss (with or without intervention). Then the Fla. Attorney General immediately divested jurisdiction of court review since acted without leave of court, without prior notice to the relator, not giving any right to the relator. This statutory interpretation nullified and rendered the right of the relator provisions superfluous, the right of the relator to conduct the case when the relator proceeds with a case on his own. The divested jurisdiction deprived relator the opportunity to demonstrate that the dismissal is unreasonable, and deprived opportunity to protect his vested interest, while the State authorized judicial oversight to handle FCA cases under the rules of civil procedure[33], and conferred right to the relator to proceed.[34] The Court suppressed the discussion of merit by the use of "Notwithstanding of the objection" out of context. The referred federal cases also used "Notwithstanding of the objection" out of context, without intervention, but used rational relation test, legitimate purpose and rational relation. Without the legitimate purpose and rational relation, the act **arbitrary prevented substantive due processes.**

---

[32] Constitutional Law / Substantive Due Process / Non-fundamental Rights https://nationalparalegal.edu/conLawCrimProc_Public/DueProcess/SubstantiveNonFundamentalRights.asp

[33] Florida 68.083 (2): …"Civil actions instituted under this act shall be governed by the Florida Rules of Civil Procedure and shall be brought in the name of the State of Florida."

[34] 68.084 (3): "…the person who initiated the action has the right to conduct the action…"

99. The Fla. Attorney General stated that the due process protects only **fundamental right**, thus she did not think that the Claimant case would require due process. She did not deny, but confirmed the intention to deprive. But a State due process cannot be less than the federal due process.[35]

## Count III
## 14th Amendment Equal Protection Law Omission

100. The **arbitrary** dismissal was not rationally related to a legitimate Government interest, which is an Equal Protection violation.

101. At a minimum, rational basis test, as a default scrutiny was used for classifications not involving race or national origin for analyzing Equal Protection violation, similarly to Due Process violation. Higher standard of scrutiny rather than the rational basis test may apply, such as Intermediate Scrutiny. The default scrutiny asks whether there is some **rational relationship** between **disparity of treatment** and some legitimate governmental purpose.

102. The Second Circuit summarized:

> "Intermediate scrutiny typically is used to review laws that employ quasi-suspect classifications...such as gender...or **legitimacy**.... On occasion intermediate scrutiny has been applied to review a law that affects 'an important though not constitutional right.'" Ramos v. Town of Vernon, 331 F. 3d 315, 321 (2d. Cir. 200

103. So, laws relating to gender or alienage, along with other "important but not constitutional rights," can be subjected to middle level scrutiny. When intermediate scrutiny applies, a substantial relationship to an important state interest is needed. The dismissal act without leave of Court and the repeated writ of prohibition to prevent review of legitimate interest

---

[35] As Justice Felix Frankfurter once explained in Malinski v. New York, 324 U.S. 401, 415 (1945), (Frankfurter, J., concurring): "To suppose that 'due process of law' meant one thing in the Fifth Amendment and another in the Fourteenth is **too frivolous to require elaborate rejection**."

deprived vested property interest, deprived access court, and the relator's economic opportunity is narrowed by taking the burden of years of legal procedures to get to the trial to pursue remedies for himself and for the State. It impacted the relator in a grave way causing life endangering homelessness due to loss of source of income, due to exposure of proceeding and due to defaming the relator to the press. The Fla. Attorney General's act was particularly invidious, unjust, prejudicial, **detrimental irrational discriminatory**. As a first impression case, it imposes a **lifetime hardship** on relators proceeding with FCA case if it can be dismissed without legitimate interest while the relator faithfully proceeded with the case on his own burden and the case was scheduled for trial, thus became a vested property interest. It demolishes a **pivotal role of FCA** cases and punishes the relator for something the State has **given right** to do and **encouraged to do** by promising reward. It denies relator the ability to live within the structure of our civic institutions, for revealing fraud. It is also important question to the federal Government that while the States enjoy political contribution from corporations, States should not remove checkpoints of political influences jeopardizing federal funds through false calm acts. In such important and illegitimate cases, even if not fundamental right, **intermediate scrutiny can be applied**. In Plyler, 457 U.S. at 223, 102 S.Ct. 2382 applying intermediate scrutiny without labeling it as such, an intermediate form of scrutiny to review of a law that implicated right to education even though undocumented aliens are not a suspect class because education, though not a fundamental right, is nevertheless an important state function. Illegitimacy, a State not being in accordance to the expected standards or rules, is present in this Claimant's case as well. In such cases, the relation to the objective must be more than merely non-arbitrary or rational –

49

it must be substantial – and the objective itself must be more than merely valid or permissible – it must be important.[36]

104. The dismissal without leave of court, **without** valid purpose and **rational relation** is an **irrational discrimination**. The case was marked as a first impression case, first to happen in Florida, singling out and arbitrary discriminating the Claimant. In *Village of Willowbrook v. Olech*, 528 U.S. 562, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000), the Supreme Court ruled that anyone who claims to have been singled out for adverse, irrational government action may bring a lawsuit based on the **violation of the Equal Protection Clause**. In effect, a person can become a "**class of one.**":

> "The Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents."

## Count IV
## Arbitrary and Capricious Act

105. The 14th Amendment, Due Process or Equal Protection Law or Rational Bases Test **prohibit arbitrary and capricious act.** In *Sioux City Bridge Co., 260 U.S. 441 (1923),* at 445 (quoting *Sunday Lake Iron Co. v. Township of Wakefield,* 247 U.S. 350, 352 (1918)):

> "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'"

106. Upon the Rational Basis Review application, the rational basis test **prohibits** the government from imposing restrictions on liberty that are irrational or arbitrary, or drawing distinctions between persons in a manner that **serves no constitutionally legitimate end.**"

---

[36] Constitutional Law / History of Equal Protection Law: https://nationalparalegal.edu/conLawCrimProc_Public/EqualProtection/HistoryOfEqualProtection.asp

107.The Fla. Attorney General dismissed the relator's civil action **on a whim** for which the relator had been given a right to proceed. This is not a common legal practice. The case was marked as a first impression case. The Fla. Attorney General did not present valid purpose or rational relation, did not give a notice to the relator prior to dismissal, did not allow the relator to protect vested property interest, neither allowed reviewing legitimate interest with equal protection of law by applying writ of prohibitions and divested jurisdiction without leave of Court, thus the dismissal was **arbitrary** and **capricious**.

## Count V
## Depriving Vested Property Interest

108.The Claimant developed property interest in the cause of action scheduled for trial. Federal decisions, such as Sequoia and Lockary or Ridenour cases, demonstrated due process requirements for dismissal by executive action. A State can elect not to confer a property interest, but it may not constitutionally authorize the deprivation of such interest, once conferred, without procedural safeguard in constitutional term. (Logan v. Zimmerman Bush Co., 455 U.S. at 432). The Court applied that the adequacy of statutory procedures for deprivation of a statutorily created property interest must be analyzed in constitutional terms. Regardless whether common or statutory law, the right of the relator must be analyzed by the same U.S. Constitution. Florida conferred the right of the relator when the relator proceeds with the action on his own, in 68.084 (3): "...the person who initiated the action has the right to conduct the action...", which statute derived from the federal statute 31 U.S.C. §3730 (c) (3). The Florida Department arbitrary and capriciously destroyed the rights and vested property interest of the relator without leave of court, without notice to the relator prior to

51

dismissal and prevented access to Court to review legitimate interest. The Fla. Attorney General did not demonstrate competing interest, valid purpose with rational relation prior to dismissal.

109. The dismissal deprived the relator an opportunity to demonstrate that the dismissal is unreasonable, thus **deprived the opportunity to protect his vested interest**, while the State **authorized judicial oversight** to handle FCA cases according to the **rules of civil procedure** and the Court scheduled the case for trial. It was vested through years of procedures as the relator proceeded with the case **on his own burden**, without the Fla. Department's intervention.

## Count VI
## Depriving Liberty

110. Courts have required due process protection for deprivations of liberty beyond the sort of formal constraints imposed by the criminal process. In Board of Regents of State Colleges v. Roth 408 U.S. 564 (1972) defines the **right to contract to engage in any of the common occupation in life:**

> "While this Court has not attempted to define with exactness the liberty . . . guaranteed [by the Fourteenth Amendment], the term has received much consideration and some of the included things have been definitely stated. Without doubt, it denotes not merely freedom from bodily restraint, but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children"

111. The Fla. State encourage relators to prevent fraud with promising reward. the relator is exposed by the process. A relator is considered as an "informer" or whistleblower. Defendant's Amicus representative depicted the relator's claim meritless or dubious to the press defaming the relator, further narrowing the relator's employment opportunity, despite

that the Court ruled that the case had merit and scheduled the trial, This had the same effect as if Motorola were giving bad references to Claimant's potential employers to tarnish his reputation. The exposure of the relator shows up on the internet worldwide. It is a common domestic and foreign company practice to research digital footprint, view internet search results and background checks before or around the interview. The employers verify court databases and avoid employing a person who pursued False Claims Act/Qui Tam against a company as a relator, despite hundreds of job applications in multiple industries and multiple locations. Some employers even responding with admitting to the relator's advanced skills but refuse to select the relator. It narrowed the range of economic opportunities available for relator and caused loss of wages. **The relator risks his exposures on behalf of the State Government.** The Fla. State, conferred giving right to pursue remedy to proceed and promised reward to the relator to lure him into the civil action. The Fla. State conferred procedure according to the rule of civil procedures. But then, the Fla. Attorney General suspended the relator's assignment on a whim, without following dismissal standards. The act of promising reward then arbitrary removing access to remedy without due process **deprived liberty** as it narrowed economic opportunity, prevented access to job opportunities and remedy. The relator became vested in the case through years of procedures to get the case to trial. The Fla. Attorney General ignored equal protection of law, while caused life endangering homelessness, loss or properties. She **deprived non-fundamental rights.** She also **deprived relator the fundamental right to access to courts** as a witness for the scheduled trial, and deprived access to court hearing on legitimate interest to dismiss, while Fla. Attorney General's act injured the relator / witness, despite that Fla. 1st DCA advised her to hold hearing as previously scheduled by the trial court in response to Fla. Attorney

53

General's emergency writ of prohibition and advised her that the emergency writ of prohibition act to prevent review is **unprecedented**, on October 7, 2014. (Case No. 1D13-4937).

## Count VII
## 14th Amendment Procedural Due Process Deprivation

112.For procedural due process purposes, a deprivation of property occurs when a person has an entitlement - having right to something or legal relationship with the state - and that entitlement is not fulfilled, such as the assignment and an early termination by State Government.[37]

113.In Board of Regents of State Colleges v. Roth 408 U.S. 564 (1972), "[w]here a person's **good name, reputation, honor**, or **integrity** is at stake because of what the government is doing to him, **notice** and an **opportunity to be heard are essential**." The Fla. Attorney General did not give the relator notice prior to the dismissal and did not follow the rule of civil procedures as the statutes claimed it would. Acted without leave of court, which divested jurisdiction of the review of dismissal on merit of the legitimate interest. It cancelled out court hearing, preventing procedural due process, fair and ordinary process of law.

114.A hearing is also appropriate if the relator presents a colorable claim that the settlement or dismissal is **unreasonable** in light of existing evidence, that the Government has not fully investigated the allegations, or that the Government's decision was based on **arbitrary or improper considerations**.[38] A commitment to legality is at the heart of all advanced legal

---

[37] Constitutional Law / Due Process of law / Procedural Due Process: https://nationalparalegal.edu/conLawCrimProc_Public/DueProcess/ProceduralDueProcess.asp

[38] S.Rep. No. 99-345, at 26 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5291 https://morganverkamp.com/wp-content/uploads/2015/05/Senate-Report-99-345-FCA.pdf

systems. As stated in throughout this claim, the Fla. Attorney General ignored several U.S. Supreme Court decisions. Deprivation must follow **fair** procedures, such as rational basis review. An **action denying the process that is "due" would be unconstitutional**. It must follow with Equal Protection Law, without irrational discrimination. **Process is due if rights were involved.** The State gave the relator right to proceed. The relator proceeded with the case **on his own burden**. Process is due before the government could take an **action that affected a citizen in a grave way**.[39]

115. Action denying the process that is "due" would be **unconstitutional**. For example, the state law gives students a right to a public education, but doesn't say anything about discipline. Before the state could take that right away from a student, by expelling her for misbehavior, it would have to provide fair procedures, i.e. "due process." Under the federal and Florida State FCA, a private citizen, the relator is given right. Before the State can take that right away from the relator, it would have to provide some fair procedure, due process.

116. The State gave right to the relator and defined rule of civil procedures. The Fla. Attorney General **acted against individual** with an **action** where **rights were involved**. The relator had **properties vested in the action. The invested and vested property interests in the action lost without remedy caused by the dismissal action without legitimate interest.** The relator's FCA action had **probable value**, but deprived of by the action. It **impoverished** the relator since the exposure of being an informer or whistleblower narrows opportunities for source of employment and income, thus lost his properties. It caused loss of economic viability of employment. By State law, the relator as a citizen was entitled to proceed with the action as an assignment until there were some legitimate reasons to take it away. These

---

[39] Wex Legal Dictionary "Due Process" https://www.law.cornell.edu/wex/due_process

circumstances, impacting relator in a grave way, require procedural due process before it could be taken away.

117. In Sequoia case, the Court concluded that the **judicial involvement does not contravene the separation of powers principle. A notice and hearing requirement would not pose significant barriers** to the Executive Branch authority.

118. The Fla. State conferred judicial oversight by conferring rule of civil procedures for FCA cases. Therefore, the separation of power argument in the Fla, 1st DCA opinion is artificially created.

119. The **Procedural Due Process** requires an opportunity for notice and a hearing prior to the deprivation of a significant property interest. See Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990) and Sequoia Orange Company v. Baird–Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998) referring Lockary case:

> "**If the government satisfies the two-step test,** the burden switches to the relator "to demonstrate that dismissal is fraudulent, arbitrary and capricious, or illegal." Id. at 1347. The same analysis is applied to determine whether **executive action** violates substantive due process. See e.g., Lockary v. Kayfetz, 917 F.2d 1150, 1155 (9th Cir.1990)."

120. The hearing requirement also **supported** from the **Senate Report to the False Claims Amendments Act of 1986,** allowing the relator to **object dismissal without reason.**

121. The hearing requirement as a procedural due process requirement is appropriate, because "**rational relation test will not sustain conduct by state officials that is malicious, irrational or plainly arbitrary**" ( Lockary v. Kayfetz  917 F.2d 1150, 1155 (9th Cir.1990). Omitting the hearing requirement, creates a **procedural insufficiency,** thus the hearing requirement is **justified.** The Supreme Court has interpreted the Fifth Amendment for the Federal Government and Fourteenth Amendment for the State **identically.** The **due process**

**of law means the same** in the Fifth Amendment and in the Fourteenth, **applicable for the State**.

122. The Fla. 1st DCA appeal and its oral argument did not resolve procedural insufficiency by itself. It was not based on analyzing legitimate government interest. It did not address procedural hearing requirement on the substantive due process, the valid purpose and rational relation as defined by rational basis review in U.S. constitutional law, to determine whether the government's actions are "rationally related" to a "legitimate" government interest. The Fla. 1st DCA just confirmed that the Fla. Attorney General had authority to dismiss without challenge, thus reflected ignorance to rational basis review. The rational basis test **prohibits** a State Government from imposing restrictions on liberty that are irrational or arbitrary and prohibits removing action for which conferred a right to proceed without substantive and procedural due process.

123. In Logan v. Zimmerman Bush Co., 455 U.S. at 432 applied Board of Regents v. Roth, 408 U.S, the Due Process Clause grants the aggrieved party the opportunity to present his case have **its merits fairly judged** and it is required before depriving property interest:

> "As our decisions have emphasized time and again, the Due Process Clause grants the aggrieved party the **opportunity to present** his case and **have its merits fairly judged**. Thus, it has become a truism that "*some* form of hearing" is **required** before the owner is finally deprived of a protected property interest. *Board of Regents v. Roth,* 408 U.S. at 408 U. S. 670-671, n. 8"

124. Procedural due process refers to the fairness and accuracy of the decision-making process. At a minimum, due process requires that an affected individual be **given notice** that **government intends to take some action and an opportunity to be heard at a meaningful time and place, certainly before divesting jurisdiction of review.** The **essential requirements** of procedural due process are **notice** and an **opportunity to respond.** The

**opportunity to present reasons**, either in person or in writing, why the proposed action should not be taken - is a **"fundamental" due process requirement** ( Armstrong v. Manzo, 380 U. S. 545, 380 U. S. 552 (1965) ). Federal due process law equally applies to the State through the 14th Amendment.[40] The minimum procedural requirements are a **matter of federal law** regardless whether the entitlement arose from state statute. The point is straightforward: the Due Process Clause provides that certain substantive rights -- life, liberty, and property -- cannot be deprived except pursuant to constitutionally adequate procedures. The 1st DCA ignored the merit of the case, the merit on legitimate interest, and the rational bases review but came to conclusion based on substantive authority from federal decisions while ignored the condition of federal FCA decisions that the Government can dismiss a meritorious qui tam action over the relator's objection **where the government offers reasons that are rationally related to a legitimate government interest.** (Sequoia Orange Company v. Baird–Neece Packing Corp., 151 F.3d 1139, 1145 (9th Cir. 1998)

## Count VIII
### Causing Loss of Properties Invested in the Case of Action

125.The exposure of pursuing a False Claims Act limit employment because companies consider the relator as an "informer" or whistleblower. It narrows the range of economic opportunities available. It causes loss of wages. Without source of income, the relator was forced to sell his properties to avoid foreclosure thus properties invested in pursuing the case. The narrowed economic opportunities prevented accruing retirement. It forced the relator to use up saving and retirement as means of support. According the 14th Amendment, the Fla.

---

[40] Malinski v. New York, 324 U.S. 401, 415 (1945), (Frankfurter, J., concurring).

Attorney General should not deprive property interest without due process when relator was just about address remedies via trial. The State has **given right** and **encouraged** to come forward and pursue remedies by promising reward when witnessing false claims act but then arbitrarily withdrew without due process and equal protection, thus causing substantial loss of properties and destruction of career without remedies. According to *Bordenkircher v. Hayes:*

> "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort, see *North Carolina* v. *Pearce, supra,* at 738 (opinion of Black, J.), and for an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is `**patently unconstitutional**.'" *Bordenkircher v. Hayes, 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978)"

126.According to Ex parte Young, 209 US 123 analysis, a State Attorney General's action narrowing economic opportunity causing deprivation of properties is **confiscatory and it is unconstitutional**. In Ex parte Young, 209 US 123:

"We also hold that the Circuit Court had jurisdiction under the cases already cited (and it was therefore its duty) to inquire whether the rates permitted by these acts or orders were too low and therefore confiscatory,"

"the fact was found that the rates fixed by the commodity act, under the circumstances existing with reference to the passenger rate act and the orders of the Commission, were not sufficient to be compensatory, and were in fact confiscatory, and the act was therefore unconstitutional."

## Count IX
## 14th Amendment Violation

127.In Count I - VIII the Fla. Attorney General in her personal and later in official capacity as executive agent of the State, along with a private party, violated the 14th Amendment. **No** state **shall make or enforce any law** which shall **abridge** the privileges or immunities of citizens of the United States; nor shall any state deprive any person of **liberty**, or **property**,

without **due process** of law; nor deny to any person within its jurisdiction the **equal protection of the laws**. The State **incorrectly adopted federal court decisions, omitted crucial details** and now established and enforces its act based on the relator's State FCA as the first impressions case. It conflicts with 14th Amendment Section 1, because acted **unconstitutionally** under the **color of law**. The clause promises that before depriving a citizen of liberty or property, government must follow fair procedures and equal protection of law.

## Count X
### 42 U.S. Code § 1985 (2) Conspiracy to Interfere with Civil Rights

128.The **Fla. Attorney General** as a **non-party** (non-prosecutor) to the case and **Motorola** in Florida State **conspired to deter, by force of authority** under the color of law, the relator as a **witness** in State Court of the United States **from attending and testifying during the due corse of justice to pending matter scheduled for trial** and this act **injured** the relator as the party and as the witness by depriving his liberty, by the removal of his vested property interest without due process, without equal protection of law, without allowing protecting his vested property interest. The Fla. Attorney General dismissal with prejudice divested jurisdiction to review by acting without leave of court, without prior notice to the relator and through writ of prohibitions. The Fla. Attorney General filed two writ of prohibitions to **prevent review** on merit of a **legitimate interest and sought to avoid appropriate remedy**. The **Fla. Attorney General** and **Motorola conspired for the purpose of impeding the due course of justice in Florida State with intent to deny relator the due process and equal protection of the law and to limit the efficacy of False Claims Act.** It **injured** the relator's

reputation, the given right, economic opportunity, legally protected vested property interest,

way of living, hurtfulness, liberty by narrowing the opportunities for employment thus source

of income and by causing **loss of properties, loss of remedies without due process. It**

**caused emotional distress. The Fla. Attorney General failed to exercise independent**

**judgment while the court determined that the case had merit and scheduled it for trial,**

**thus the arbitrary discriminating dismissal act impeded the course of justice.** (Please see

paragraph 63 for details of failing exercise independent judgment.) It violated U.S.C § 1985

(2) and (3). There was a close connection between the State official and a private actor. The

State released additional funds for unscheduled maintenance and for repurchasing substantial

part of the product. The state official, the Fla. Attorney General locked out the relator from

his individually assigned prosecutorial role. The act prevented access to court system,

prevented court review on merit.

129. The following are the considerations, as positive signals in Claimant's case, to determine

**joint activity and acting in concert** that a private party conspiring under the color of State

law - based on Dennis v. Sparks, 449 U.S. 24, 28-29 (1980) :

> - Deprivation of federal rights by a private party can constitute "state action" if the
> State agent has participated in joint activity to a degree that the **actions of one party**
> **can be attributed to the other.**
>
> - Acting **in concert** causing deprivation.
>
> - Knowingly accepted the benefits of an unconstitutional practice.
>
> - The state actor, Motorola benefited relying on Fla. Attorney General's assistance to
> prevent hearing and trial to reduce its contractual obligation, but to receive full
> payment even if the delivered product missed contract specification and needed to be
> repurchased.
>
> - The injury caused was aggravated in a unique way by the incidents of
> governmental authority.

- To act "under color of" state law for 1983 purposes does not require that the defendant be an officer of the State. It is enough that he is a willful participant in joint action with the State or its agents.

- Private persons, jointly engaged state officials in the challenged action, are acting "under color" of law for purposes of 1983 actions.

- Motorola and its Amicus Currier's representation influenced dismissal while misconstruing decisions, providing false statements regarding the merit, omitting crucial part of the dismissal process to prevent hearing and trial on false claims, which is more than just being on the "winning" side of the Fla. Attorney General decision.

- The retaliation, started by Motorola and continued by the the Fla. Attorney General, culminated for pursuing given rights and for fighting against fraud, by narrowing the relator's economic opportunity and preventing access to court and remedies, removing vested property interest without due process and equal protection of law.

- Motorola counsel asked for two-week trial then the Fla. Attorney General argued lengthy trial as one of the reason for dismissal afterwards.

- The Fla. Attorney General failed to execute independent judgment while protecting Motorola's interest to prevent hearing and trial to review false claims, while misconstrued and ignored federal law to protect Motorola's interest. (See paragraphs 57 - 59.)

- The Fla. Attorney General ignored Fla. 1st DCA order to hold hearing in response to writ of prohibition. The act prevented review of false statements filed on Court in an affidavit. It prevented reviewing the release of approximately $11.5 million for unscheduled maintenance and repurchase of the AFIS matching system product. It prevented reviewing why the trial court Judge (Judge Carroll) and assistant (Maryann C. Rybnicky) thought that the dismissal was a settlement.

- The ignorance to the inconsistency of FDLE Project Manager's affidavit and the cabinet documents.

- Defendant's representative depicted the relator's claim meritless or dubious to the press defaming the relator, further narrowing the relator's employment opportunity. despite that the Court ruled that the case had merit and scheduled the trial. This had the same effect as if Motorola were giving bad references to Claimant's potential employers to tarnish his reputation, because companies do search the internet and do background checks before hiring.

- The case was scheduled for trial as an order, a ruling, which would have impacted the defendant Motorola adversely, but the dismissal suffered the relator instead. The order for trial proceeding was prevented by the Fla. Attorney General's dismissal

without leave of court, which arbitrary divested jurisdiction. Although, the State statute conferred Rules of Civil Procedure in 68.084 (3) for processing such case.

- Participation in subverting the judicial process and in so doing inflict injury on other persons, such injuries are: narrowed economic opportunity and caused loss of properties, source of income, retirements, career opportunities, reputation and liberty. It drove the relator into homelessness endangering the relator's life.

- The private party has damages liability for conspiracy and injury even if state agent acts in personal-capacity, official-capacity or in judicial-capacity. Even if the state agent enjoys immunity, a private party, who corruptly conspire, is not insulated from damages liability. If state agent is acting in personal-capacity, the state agent and the private party may share damage liability for conspiring to cause deprivation without due process and for causing injury.


## Count XI
## 42 U.S. Code § 1985 (3) Depriving Persons of Right or Privileges

130. If two or more persons in any State or Territory conspire on the premises of another, for the purpose of depriving, **either directly or indirectly**, any person or class of persons of the **equal protection** of the laws, or of **equal privileges** and **immunities** under the laws in any case of conspiracy set forth in section 1985 of Title 42, if one or more persons **engaged therein do**, or **cause to be done**, any act in furtherance of the object of such conspiracy, whereby another is **injured** in his person **or property**, or **deprived** of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, **against any one or more of the conspirators**.

## Count XII
## 42 U.S. Code § 1983 State Actor Doctrine

131. **The agreement of the minds exist** among Fla. Attorney General and Motorola by that the pending trial was prevented by violating constitutional rights. It shared the common

objective of impeding the scheduled trial. The dismissal act without due process culminated

whistleblower retaliation initiated by Motorola. The Fla. Attorney General engaged in an

irrational (without rational legitimate interest) and an arbitrary discrimination without being a

party to the case. The Fla. Attorney General **"failed to exercise independent judgment will**

**support an inference of conspiracy with a private party"** ( United Steelworkers of Am. v.

Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (en banc) ). Deprivation of due

process, which impacted the relator in a **grave way** reflected an intent to **silence** and **punish**

the relator.

132.Lobbying organizations, depicted the relator's claim meritless or dubious defaming the

relator to the press, further narrowing the relator's employment opportunity, tarnishing his

reputation.[41] The Florida trial Court decided that the case had merit and scheduled the case

for trial, showing that these representations by lobbying organizations were incorrect. The

lobbying organization of Washington Legal Foundation had also represented other Motorola

divisions (Motorola Mobility) in a Federal Trade Commission Case, showing ties with

Motorola.[42] The Florida Justice Reform Institute as Amicus Curiae, lobbying organizations

and the Fla. Attorney General overpowered the relator by authority, the force of substantive

authority, with an interest to limit the efficacy of False Claims Act, without giving any right

to the relator to protect his rights and property interest. These lobbying organizations

encouraged other State Attorneys General to act similarly just as Fla. Attorney General did.

---

[41] Washington Legal Foundation: "Businesses facing relator-driven state FCA claims of dubious merit
should take inspiration from Barati v. State of Florida and urge responsible state attorneys-general
elsewhere to follow Attorney General Bondi's lead." https://wlflegalpulse.com/2016/04/12/florida-court-
allows-state-attorney-general-to-dismiss-frivolous-false-claims-act-actions/

[42] The Washington Legal Foundation to the Federal Trade Commission: https://www.ftc.gov/sites/default/
files/documents/public_comments/2013/02/563708-00030-85599.pdf

As alleged, the act by the Fla. Attorney General and Motorola reflect a conduct to disregard the 14th Amendment, the due process, equal protection of law, access to court as a witness, while injuring the relator / witness, which are the essence of conspiracy. The act is an obstruction of justice, intimidating party, witness, depriving rights or privileges and the act is conspiracy to interfere with civil right (U.S.C § 1985 (2) and (3)).

133. Section 1983 actions may be brought to redress constitutional violations effected under color of state law. A private party may be considered to have acted under color of state law when it engages in a conspiracy or acts **in concert** with state agents to deprive one's constitutional rights ( Adickes v. S.H. Kress & Co., 398 U.S. 144, 152, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142, 151 (1970) ).

134. A private party involved in such a conspiracy, even though not an official of the State, can be liable under Section 1983. 'Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. **It is enough that he is a willful participant in joint activity with the State or its agents.**

135. To test conspiracy a pertinent jury instruction includes some of the followings, among other statements.[43]

136. A conspiracy is a combination of two or more persons, by concerted action to accomplish some **unlawful purpose**, or to accomplish some **lawful purpose by unlawful means**. So, a conspiracy is a kind of partnership, in which each member **becomes the agent of every other member**. The Fla. Attorney General and Motorola became **agent of each**

---

[43] E. Devitt, C. Blackmar & M. Wolff, Federal Jury Practice and Instructions Sec. 103.23 (4th ed. 1987) (Devitt, Blackmar & Wolff)

**other**. The essence of a conspiracy is an **act in concert** or **combination** or **act in agreement** to violate or to disregard the law.

137.The evidence in the case need not show that the members entered into any express or formal agreement, or that they directly, by words spoken or in writing, stated between themselves what their object or purpose was to be. The relator's case shows that **members tacitly came to a mutual understanding to try to accomplish a common and unlawful plan**. Causation provides a means of connecting conduct with a resulting effect.

138.A State official can encourage corporations to give political contribution to make the problems go away even when a relator faithfully proceeds with a claim, while the Fla. Attorney General's act violated the Constitution and federal law in order to protect Motorola's interest.

139.This can have significant impact on future cases to come. States frequently rely on federal funds, or Department Of Justice (DOJ) grants to improve public safety and criminal justice system. The act of removing relator's right, vested property interest without leave of court, without prior notice to relator, without due process as a non-party to the case, and causing loss of properties, wages and retirement without remedies discourage whistleblowers coming forward. Even if a relator reports related abuse, a State official may receive campaign contribution and can make deals with corporations by removing check on corporate or political influence while releasing additional funds to fix or repurchase the product to fix delivery shortcoming thus making the federal government pay for it.[44] It undermines False Claims Act's role in combating fraud against government. **The AFIS product scheduled to cost $7.4 million but ended up costing nearly $19 million for unscheduled maintenance**

---

[44] The press reported that Motorola gave more than $128,000 to candidates and committees helping to reelect Florida Department officials.

**and then for repurchasing the product from MorphoTrak, as shown by Florida cabinet documents**.

## Count XIII
## 42 U.S. Code § 1983

140.Every person, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

## RELEIF REQUESTED

141. **Declaratory relief** of unconstitutional and fraudulent acts as described from Counts I to XIII.

142.The Claimant is seeking monetary relief. **Compensatory damages** are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendants' wrongful conduct. A plaintiff may be compensated for intangible, psychological injuries as well as financial, property harms, caused by the wrongful conduct. The loss includes diminished earnings, loss of retirement, property loss - as **special damage;** or measurable monetary loss; and loss of reputation, injury to the feeling, emotional distress - as **general damage**.

143.The **damages** caused by Motorola and Fla. Attorney General in individual capacity are intangible losses, such as suffering, emotional harm **loss of career reputation, injury to the feeling**. The right to due process is independent from merit and the associated emotional

67

distress were compensable injuries under Section 1983 as evidenced by the defendants conduct and observed in plaintiff's loss of income, properties, retirement. Determining compensatory damages, the Courts or jury would consider any lost earnings, loss of earning capacity, out-of-pocket expenses, and any mental anguish or emotional distress that the Plaintiff might have suffered as a result of the conduct by the defendants depriving him of his civil rights.

144. The **special damage** is **$1,927,760.52**.[45] caused by Motorola and Fla. Attorney General in individual capacity.

145. **General damages** caused by Motorola and Fla. Attorney General in individual capacity: The Supreme Court held that Section 1983 created a **species of tort liability**. Section 1983 authorizes compensatory damages not only for **out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and**

---

[45] Trulia Estimate on 10/17/2017 is $598,068; 8 years of loss of income 5% increase starting at $120,000 / year is $1,145,894; Mercedes Benz SL500 customized order is $110,000; forced use of retirement in 2009 is $62,774; forced use of retirement in 2010 is $1,329; Moving and Relocation Expenses: $4,597; Storage payments: 5,098.52; Total is $1,927,760.52.

**mental anguish and suffering.**[46] The defendants' act exposed the relator to major **suffering**, and **emotional distress** for many years, forcing Claimant into life endangering homelessness. He was forced out of the country to survive hardship of depriving the ability to buy food, shelter and basic services. The acts deprived or caused to deprive the plaintiff's ability to live in dignified surroundings in the U.S., and advance in his career. The plaintiff requesting jury to consider **$1 million for each year** of suffering and emotional distress since the case filed on 09/03/2009 as general damages.

146. **Punitive damages** are awarded when a conduct   involves reckless or callous indifference to the federally protected rights of others, acting with **reckless indifference to the plaintiff's federally protected rights**, associated with either willful misconduct or gross negligence, for any neglect of duties imposed for the protection of life or property is culpable. Its purpose to punish to deter future wrongdoing, to deter or punish malicious deprivations of right. Reckless or callous disregard for the claimant's rights, as well as

---

[46] Memphis Community. School District. v. Stachura, 477 U.S. 299 (1986): A suspended teacher alleged depriving him of liberty and property without due process of law. The Sixth Circuit District Court of Appeals, as standard elements of **compensatory** and **punitive damages**, instructed the jury to award a sufficient amount to compensate respondent for the injury caused by petitioners' unlawful actions: "You should consider in this regard any lost earnings; loss of earning capacity; out-of-pocket expenses; and any mental anguish or emotional distress that you find the Plaintiff to have suffered as a result of conduct by the Defendants depriving him of his civil rights." In addition, the damages instructions were divided into three distinct segments: (i) **compensatory damages** for harm to respondent, (ii) **punitive damages,** and (iii) additional "compensatory" damages for violations of constitutional rights. **The Supreme Court** granted certiorari, limited and reversed only because of the third additional instruction on the abstract value of the rights, and issued a new trial on damages allowing the first two segments. The Supreme Court noted: "We have repeatedly noted that 42 U.S.C. § 1983 creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." Also noted: " damages in tort cases are designed to provide "*compensation* for the **injury caused to plaintiff by defendant's breach** of duty." Also noted: To that end, **compensatory damages may include** not only out-of-pocket loss and other monetary harms, but also such injuries as "**impairment of reputation . . . personal humiliation, and mental anguish and suffering.**" confirming the first two categories, and noted: "The submission of the third of these categories was error.", "Petitioners do not challenge the award of punitive damages in this Court", thus remanded for a new trial on compensatory damages, allowing compensatory and punitive damages.

intentional violations of federal law, should be sufficient to trigger the jury's consideration of the appropriateness of punitive damage.

147.**Under official capacity**, an injunction to reinstate the scheduled trial which was fraudulently prevented by Fla. Attorney General and Motorola. An injunction to allow the relator to continue pursuing remedies behalf of the taxpayers as scheduled, on State or Federal Court.

148. **Under official capacity**, an injunction requiring compliance with the federal substantive due process - presenting legitimate government purpose and rational relation before dismissals, procedural due process - allowing relator to protect vested property interest, allowing the relator access to court to review legitimate interest, and equal protection law. This is to conform the Fla. Attorney General future conduct according to the requirement of the Fourteenth Amendment and accessing court. The Fla. Attorney General be enjoined from enforcing an act in contravention of federal law, as an ongoing violation.


# CERTIFICATION

As required by Federal Rule of Civil Procedure 11, I certify by signing below that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to timely notify the Clerk's Office if there is any change to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date: June 4, 2018                  Plaintiff's Signature:


                                    *Zoltan Barati*

Printed Name of Plaintiff:          Zoltan Barati

Mailing Address:
                      26741 Portola Pkwy, Ste. 1E# 165
                      Foothill Ranch, CA, 92610-1763

E-Mail Address for electronic submission: zgraphics@me.com

As the relator was forced out of the country to survive hardship without ability to buy food, shelter and basic services, took refuge at:
                      Beke ter, 6c fsz. 3
                      Erd, H-2030
                      Hungary


Telephone (US number): (949) 407 8149

71

Use Certified U.S. Mail with Return Receipt

Address To File:


# CLERK, U.S. DISTRICT COURT
# 111 N. ADAMS STREET
# SUITE 322
# TALLAHASSEE, FLORIDA 32301-7730


Sender, from:

Zoltan Barati

26741 Portola Pkwy, Ste. 1E# 165

Foothill Ranch, CA, 92610-1763



PRIORITY MAIL
Mailed from ZIP 92610
PM Flat Rate Env

$12.75   US POSTAGE

CommercialBasePrice

071S00979688

**PRIORITY MAIL 3-DAY**

ZOLTAN BARATI
26741 PORTOLA PKWY STE 1E # 165
FOOTHILL RANCH CA 92610

JUN 0 9 2018      0006

Shipped using PostalMate®
Pkg:138683

RETURN RECEIPT REQUESTED

SHIP TO:

CLERK, U.S. DISTRICT COURT
111 N ADAMS ST STE 322
TALLAHASSEE FL 32301-7730

**USPS CERTIFIED MAIL**

9402 7102 0082 9756 9027 95

PRIORITY MAIL
POSTAGE REQUIRED